# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 14, 2009 Session

## JOHANNA L. GONSEWSKI v. CRAIG W. GONSEWSKI

**Appeal from the Circuit Court for Sumner County**
**No. 30476     Tom E. Gray, Judge**

---

**No. M2009-00894-COA-R3-CV - Filed February 17, 2010**

---

The wife in this divorce action contends the trial court erred in the division of the marital property, in denying her request for alimony, and in denying her request to recover her attorney's fees. We have determined the wife is in need of and the husband has the ability to pay alimony *in futuro*, in the amount of $1,250 per month, and that she is entitled to recover attorney's fees. We, therefore, reverse the judgment of the trial court regarding alimony *in futuro* and remand the issue of attorney's fees, leaving it to the discretion of the trial court to determine an amount that is reasonable and necessary under the circumstances of this case. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part; Affirmed in Part**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Edward J. Gross, Nashville, Tennessee, for the appellant, Johanna L. Gonsewski.

William L. Moore, Jr., Gallatin, Tennessee, for the appellee, Craig W. Gonsewski.

## OPINION

Johanna L. Gonsewski (Wife) and Craig W. Gonsewski (Husband) were married in Huntsville, Alabama, on May 9, 1987, when they were twenty-two years old, and the marriage lasted twenty-one years. They have two children, both of whom are now adults.

At the time of the marriage, Wife had just graduated from Athens State College and was working at Redstone Arsenal; Husband was still attending college at the University of Alabama in Huntsville. Not long thereafter, the couple moved across the state line to live in

Fayetteville, Tennessee, where Husband accepted employment as an in-house accountant. Subsequently, the parties and their two children moved to Hendersonville, Sumner County, Tennessee, where they resided when this divorce action commenced.

Both spouses worked throughout the marriage. At the time of the divorce in 2009, Wife was employed by the State of Tennessee, where she had been working for more than sixteen years. Husband, who had worked as an in-house accountant for several different companies during the course of the marriage, was employed as the Comptroller of Franke Foodservice Systems, a division of Franke Inc., at the time of the divorce.

Wife filed for a divorce on September 5, 2007. As an obvious by-product of a very contentious divorce, numerous disputes, court filings, and hearings ensued. The final hearing was held on March 19, 2009. Following the final hearing, the trial court granted Wife the divorce on the ground of Husband's inappropriate marital conduct.

The trial court classified certain tangible personal property and an IRA investment account of $15,130.51 as Husband's separate property. As for Wife's separate property, the court also classified a 2000 Mercury Sable (a gift from her mother), the sum of $26,000 (which Wife had received prior to the marriage from a settlement for personal injuries she sustained in an automobile accident) and certain tangible property as her property.

The following property was classified as marital property: a 2004 GMC Envoy, a 2007 Dodge Ram truck, various life insurance policies, retirement benefits, investment accounts, savings accounts and bonds, a note for $2,500 owed by Husband's brother, Husband's 2008 and 2007 bonuses, the refund Husband received from their 2007 joint tax return and 2007 tax stimulus, an American Legacy Rollover annuity and the couple's residence. The court made a finding that the net equity of the residence was estimated to be $177,423.

The marital estate was divided as follows. The trial court awarded one-half of the marital residence to each spouse, ordered that residence be sold, and the net equity divided equally.[1] Wife was awarded the $4,000 Knights of Columbus life insurance policy in Wife's name; Wife's 2008 tax return; the Great West 401K retirement account valued at $62,000; the State of Tennessee Retirement fund of $60,000; and a U.S. Savings Bond of $400. Wife also was ordered to pay a $3,000 debt on a Lowe's credit card. For his part, Husband was awarded the $4,000 Knights of Columbus life insurance policy in Husband's name; his 2008 tax return; his Franke 401K of $19,018; his Faber Castell retirement benefits of $25,000; the

---

[1]The parties were ordered to pay one-half of the monthly mortgage, insurance and other expenses related to the residence until it was sold.

Fidelity Investor's account of $15,123; the Fidelity Rollover IRA of $2.00; an IRA brokerage account of $700, the Old Hickory Credit Union Savings account of $2,473; the note owed by Husband's brother of $2,250; and a 2002 Chevy Envoy of $5,790. Husband was awarded the 2007 Dodge Ram that has a negative value of $4,078 due to a lien on the vehicle. The total net value of the marital assets awarded to Husband was $189,198.79, which is inclusive of his interest in the marital residence, and to Wife was $201,747.79, which is inclusive of her interest in the marital residence.

In her Complaint and at trial, Wife requested rehabilitative and *in futuro* alimony, and both parties had requested to recover their attorney's fees and expenses incurred during the divorce proceedings. The trial court found in pertinent part that Husband's income in 2008 was $137,418.17 (which was based on a current income of almost $100,000 and the most recent bonus of $38,000) and Wife's income from the State of Tennessee was $72,000. The trial court also noted that Wife had steady employment of over sixteen years with the State of Tennessee and that Husband's income for the prior year of $138,000 was due in significant part to a bonus that was dependent upon the financial success of his employer, and thus, it was not certain whether he would receive future bonuses or how much they might be. For these reasons, the trial court denied Wife's request for spousal support. As for the request of both parties to recover their respective attorney's fees, the court denied both requests upon the finding that much of the expense they incurred was due to numerous and frequent filings by both parties that necessitated numerous unnecessary court hearings. A Final Decree of Divorce was entered on April 14, 2009. This appeal by Wife followed.

On appeal she contends the trial court erred in not awarding her alimony *in solido* or transitional alimony; the trial court erred in not equally dividing all of the parties' assets, and it erred in not ordering Husband to pay Wife's attorney's fees and litigation expense.

**ANALYSIS**

I.

DIVISION OF MARITAL ESTATE

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). This is because Tennessee is a "dual property" state, referring to the distinction between "marital property" and a spouse's "separate property," *see Smith v. Smith*, 93 S.W.3d 871,

875-76 (Tenn. Ct. App. 2002); thus, a spouse's separate property cannot be included in the marital estate.[2]

Therefore, separate property should not be included in the marital estate. *Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 WL 1651787, at *3 (Tenn. Ct. App. July 12, 2005). Property classification is a question of fact.[3] *Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000). Thus, we review the trial court's classification using the familiar standard of review in Tenn. R. App. P. 13(d).

Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact, *Kinard*, 986 S.W.2d at 231; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Smith*, 93 S.W.3d at 875.

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard*, 986 S.W.2d at 230. Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983), and this court accords great weight to the trial court's division of marital

___

[2]"Separate property," as that term is defined in Tenn. Code Ann. § 36-4-121(b)(2), is not marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A).

[3]The difficulty in classifying property as marital property or separate property may be exacerbated when the property undergoes a metamorphosis during the marriage or when the nonowner spouse contributes substantially to the preservation or appreciation of the separate property. This is because marital property can become separate property when a spouse gives it to the other spouse, *Kinard v. Kinard*, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998), and separate property can become marital property when its original owner commingles it with marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). To complicate matters, the increase in the value of separate property, and the income from separate property, may be considered marital property if the nonowner spouse contributed substantially to the separate property's preservation and appreciation. Tenn.Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 832-33 (Tenn. 1996).

property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

Wife contends that she made cash contributions toward the purchase of the marital residence from her separate estate and that the trial court erred in not compensating her for those contributions. We acknowledge that she made substantial contributions, as did Husband, but once their separate property was contributed toward the purchase of the marital residence or improvements thereto, those contributions became marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (holding that separate property can become marital property when its original owner commingles it with marital property). We, therefore, find that the trial court correctly classified these assets as marital property.

We have also considered the other issues raised that pertain to the classification and division of the marital estate and find no error with the trial court's decisions regarding these issues. Accordingly, we affirm the manner in which the trial court classified property as separate and marital property and in the division of the marital estate.

II.

SPOUSAL SUPPORT

Wife contends she should have been awarded alimony *in solido* from Husband's share of the equity in the marital residence. She further contends, due to the disparity in their earning capacity, that she needs and Husband has the ability to pay transitional alimony.

The court may award rehabilitative alimony, alimony *in futuro*, transitional alimony, alimony *in solido* or a combination of these. Tenn. Code Ann. § 36-5-121(d)(1). The Tennessee General Assembly has stated it is its intent that "a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony."[4] Tenn Code Ann. § 36-5-121(d)(2). In such circumstances when rehabilitation is not feasible, "the court may grant an

---

[4]"To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-121(d)(2).

order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient, . . . ” Tenn Code Ann. § 36-5-121(d)(3).

Trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Therefore, appellate courts are disinclined to second-guess a trial court’s decision regarding spousal support unless it is not supported by the evidence or is contrary to public policy. *Brown*, 913 S.W.2d at 169.

Our legislature has stated a public policy preference for temporary, rehabilitative spousal support over long-term support. Tenn. Code Ann. § 36-5-121(d)(2); *Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996); *Wilson*, 929 S.W.2d at 375. The purpose of rehabilitative support is to afford the disadvantaged spouse an opportunity to acquire or enhance job skills and/or education in order to enable him or her to be self-sufficient, *Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989), as distinguished from long-term spousal support, which serves the purpose of providing support to the spouse who is unable to achieve self-sufficiency. *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). The purpose of temporary spousal support is to aid the disadvantaged spouse to become self-sufficient. *Shackleford v. Shackleford,* 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). The purpose of long-term spousal support is to aid the disadvantaged spouse when economic rehabilitation is not feasible in order to mitigate the harsh economic realities of divorce. *Id*.

There are no hard and fast rules for spousal support decisions. *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Alimony decisions require a careful balancing of the factors in Tenn.Code Ann. § 36-5-121(i) and typically hinge on the unique facts and circumstances of the case. *See Anderton*, 988 S.W.2d at 683; *see also Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994). The two most important factors are the need of the disadvantaged spouse and the obligor’s ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996).

The trial court denied Wife’s request for any type of spousal support. This decision was based on the trial court’s finding that Wife had steady employment, over sixteen years with the State of Tennessee, that she earned $72,000 per year, that Husband’s current income was approximately $100,000, and that he had received a recent bonus of $38,000, which increased his income for the year to $138,000; however, future bonuses were not guaranteed and the amount of any bonuses was dependent on the financial success of his employer. We find the evidence preponderates against the trial court’s decision to deny Wife any spousal support, realizing that Husband’s income has consistently been much greater than Wife’s and while Husband is not guaranteed future bonuses, it is more likely than not that he will

continue to receive substantial bonuses, which will further the discrepancy in the earnings of the parties.

Long-term alimony may be awarded when the court finds that there is a relative economic disadvantage and that rehabilitation is not feasible to afford the disadvantaged spouse an earning capacity that will permit a standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the advantaged spouse. *See* Tenn. Code Ann. § 36-5-121(d)(3). When making a determination concerning alimony, the court should take into account the relative earning capacity of the parties, the relative education, training, and ability of Husband and Wife to improve their earning capacity, the standard of living the parties have enjoyed during the marriage, the potential of future earning capacity, and the extent to which each party has made such tangible and intangible contributions to the marriage. *See* Tenn. Code Ann. § 36-5-121(i); *see also Herrera*, 944 S.W.2d at 388.

Wife is a college graduate, and she is a career employee, having been with the same employer for sixteen years. Therefore, there is no need for rehabilitative alimony. Over the past several years, however, Husband, who is an accountant, has earned substantially more than Wife and the discrepancy in their income grew to $60,000 in the year prior to the divorce. Therefore, Wife is the economically disadvantaged spouse, and Wife's earning capacity will not permit her to maintain a standard of living after the divorce that is reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to Husband. Considering the above factors, we find that Wife has a need and Husband has the ability to pay alimony *in futuro,* which is necessary to mitigate the harsh economic realities of divorce. *See Shackleford,* 611 S.W.2d at 601.

Having determined that Wife is entitled to alimony *in futuro*, we must now determine how much alimony is appropriate. After considering the relevant facts for establishing alimony *in futuro*, particularly the discrepancy in their earning capacity, we find Wife has the need and Husband has the ability to pay support in the amount of $1,250 per month, which shall be paid by Husband until the death of Husband or Wife or the remarriage of Wife, subject to modification by the trial court based upon material changes identified in Tenn. Code Ann. § 36-5-121(f).[5]

---

[5]"An award of alimony *in futuro* shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

Wife contends the trial court erred by not awarding her the attorney's fees she incurred at trial; she also seeks to recover the fees and expenses incurred on appeal.

An award of attorney's fees in a divorce action constitutes alimony *in solido*. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *Herrera*, 944 S.W.2d at 390; *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992). Like other spousal support, an award of attorney's fees is available to either spouse. *Herrera*, 944 S.W.2d at 390. An award of attorney's fees is to be based on a consideration of the factors set forth at Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking them does not have adequate funds to pay his or her legal expenses. Moreover, the spouse need not use assets provided for future income in the division of marital property to pay the legal expenses. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

Here, the trial court determined that Wife was not entitled to any form of alimony including attorney's fees. We, however, determined that Wife is entitled to alimony *in futuro,* which is necessary to mitigate the harsh economic realities of divorce due to the disparity of their earning capacities. Because we reversed the trial court's decision concerning alimony *in futuro*, it is appropriate for us to consider whether she is entitled to alimony *in solido* in the form of attorney's fees. *See Langschmidt*, 81 S.W.3d at 751 (remanding the issue of whether the wife was entitled to attorney's fees where the trial court had found she was not due to the amount of marital property awarded to the wife and the amount of marital property was being reduced substantially as a consequence of the Supreme Court's decision).[6]

The award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith." *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983). Accordingly, a spouse with adequate property and/or adequate income is not entitled to be compensated for his or her attorney's fees and expenses. *Wilder*, 66 S.W.3d at 895; *Koja*, 42 S.W.3d at 98; *Lindsey v. Lindsey*, 976 S.W.2d 175, 181 (Tenn. Ct. App. 1997); *Houghland*, 844 S.W.2d at 623-24; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). The award of

---

[6]In *Langschmidt*, the Supreme Court held that the appreciation of substantial assets of the husband were not marital property, as the trial court had found, which substantially diminished the marital estate that was awarded to the wife, and because of their ruling it was necessary to remand for the trial court to determine whether the division of marital property is equitable. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 750 (Tenn. 2002). Further, because the trial court considered its sizeable distribution of marital assets in determining that rehabilitative alimony was not appropriate, the Supreme Court also instructed the trial court to consider whether rehabilitative alimony was proper in light of the factors listed in Tenn.Code Ann. § 36-5-121(i). *Id.*

attorney's fees as alimony is appropriate when the divorce fails to provide the disadvantaged spouse with a revenue source, such as from the property division, or assets from which to pay his or her attorney's fees. *Yount*, 91 S.W.3d at 783. Moreover, an award of attorney's fees is appropriate if the spouse received alimony as a result of the divorce but will be forced to deplete those funds, designed to sustain that spouse, in order to pay the attorney's fees. *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988).

The only marital asset of substantial value Wife will receive in the divorce is her one-half interest in the marital residence, and it is readily apparent that Wife will need this asset to obtain a new home. Therefore, this asset is not available for Wife to pay her attorney's fees. Wife's only other assets of any real value are her two retirement accounts, the Great West 401K retirement account valued at $62,000 and her State of Tennessee Retirement fund, and it would be most unadvisable for Wife to liquidate either retirement fund.

An award of attorney's fees is appropriate when the disadvantaged spouse's income is not sufficient to pay her attorney's fees and the divorce fails to provide her with a revenue source, such as from the property division, or assets from which to pay her attorney's fees. *Yount*, 91 S.W.3d at 783. Wife does not have an adequate income or adequate assets with which to pay her attorney's fees. Accordingly, we find that Wife is entitled to recover at least a portion of her attorney's fees and related legal expenses incurred in this matter.

Our decision, however, does not mandate that Wife is entitled to recover all of her attorney's fees; to the contrary, the amount of attorney's fees she may recover must be reasonable under the circumstances of each particular case. *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980). We leave that determination up to the sound discretion of the trial court.

Wife has also requested to recover the attorney's fees and expenses she incurred on appeal. We find she is entitled to recover those fees and expenses to the extent they are reasonable and necessary under the circumstances of this case. Accordingly, we remand this issue to the trial court to determine the amount of attorney's fees and expenses Wife is entitled to recover.

## IN CONCLUSION

The judgment of the trial court is reversed in part and affirmed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE