# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 31, 2010 Session

## DIANA (SCHUTTS) GILBERT v. DREW EDWARD GILBERT

**Appeal from the Chancery Court for Knox County**
**No. 164520-2     F. Daryl Fansler, Chancellor**

_____

### No. E2009-02118-COA-R3-CV-FILED-SEPTEMBER 15, 2011

_____

In this divorce case, the husband appeals the trial court's division and valuation of the marital estate. On appeal, the husband raises several issues and essentially argues that the trial court should have restored the parties to their respective premarital situations due to the short duration of the marriage. The wife also challenges the trial court's division of the marital estate. After an extensive review of the record, we find no error in the trial court's division and valuation of the marital estate in accordance with Tenn. Code Ann. § 36-4-121(a)(1). Therefore, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

K.O. Herston, Knoxville, Tennessee, for the appellant(s), Drew Edward Gilbert.

Jerrold L. Becker, Knoxville, Tennessee, for the appellee(s), Diana (Schutts) Gilbert.

## OPINION

## I. FACTUAL BACKGROUND

Drew E. Gilbert ("Husband") and Diana S. Gilbert ("Wife") were married in April 1998. At the time of the marriage, Husband was 62 and Wife was 48. After approximately seven years of marriage, Wife filed a Complaint for Divorce on June 28, 2005, to which Husband filed a counterclaim.

Wife brought liquid assets worth $119,490.17 into the marriage, including the proceeds from the sale of her home, inherited funds, and money from an antiques business. Wife also owned a 50% interest in a condominium located in North Carolina where her mother resided until her death. After marrying Husband, Wife's mother passed away, and she inherited an additional 25% interest in the condominium, totaling a 75% interest in the unit with her brother holding the remaining 25% interest. She deposited the assets into two joint accounts after the marriage. Husband's premarital assets were substantially greater than Wife's assets. Husband solely owned Eagle Realty Corporation ("Eagle Realty") through which he sold and developed real estate. He also owned a residence on Belcaro Drive in Knoxville, Tennessee ("Belcaro Drive property"), two properties in Florida, and a one-half interest in an Anderson County, Tennessee, property consisting of 99 acres that he shared with his former wife, Gayle Gilbert.

Several months prior to the marriage, Husband and Wife began renovating the Belcaro Drive property. It was a collaborative effort in which Husband paid for the expenses related to the renovation, and Wife selected the décor and fixtures. At the time of the marriage, the appraised value of the property was $130,000, and after the parties separated, the fair market value was $190,000 in April 2007.

After the marriage, Husband formulated plans to develop the 99 acres in Anderson County into the Emory Woods subdivision ("Emory Woods property"). Husband purchased his former wife's one-half interest in the property and then transferred the property by quitclaim deed to Wife, titling the property in both of their names. A limited liability company known as Emory Business Partners, LLC ("EBP") was created, and an Articles of Organization document was submitted to the Secretary of State. Initially, with the creation of EBP, Wife owned a 99% interest and Eagle Realty owned the remaining 1%. The parties then quitclaimed the Emory Woods property to EBP in October 2000. Wife also assumed an active role in the development of Emory Woods. She was listed as the chief manager on EBP's formation documents, and she executed the land development loan for $600,000 from First Century Bank, including a personal guaranty. The parties eventually shifted the ownership interests in EBP, reducing Wife's interest to 70% and increasing Eagle Realty's interest to 30%, in order to take advantage of tax benefits.

The transfer of the Emory Woods property was one of several transfers in this case. After failed business ventures, Husband transferred his separate property to Wife to avoid a potential third-party creditor's claims. Subsequently, Husband executed additional quitclaim deeds, titling the Belcaro Drive property and the Florida properties in both his name and Wife's name. After a few years, Husband no longer feared a claim from the third-party. Thereafter, he demanded Wife transfer the Belcaro Drive property and Emory Woods property back to him, threatening to sue her for a $50,000 promissory note if she failed to

comply.[1] Fearing that Husband would call in the promissory note, Wife executed a quitclaim deed transferring the Belcaro Drive property to Husband along with an Amended Operating Agreement ("Agreement") that reduced her 70% share in EBP to 10%. The Agreement provided Eagle Realty with a 90% interest in EBP in exchange for the release of Wife's liability from the land development loan for Emory Woods. A year after executing the Agreement, Wife remained personally liable for the loan. She subsequently sent a letter revoking the transfer of her interest in EBP to First Century Bank.

Shortly before the parties separated, Husband purchased a property located on Essary Drive in Knoxville ("Essary Drive property"). He purchased the Essary Drive property with funds from a home equity line of credit for the Belcaro Drive property, for which both parties were liable. Husband titled the property in the name of Eagle Realty. The appraised fair market value of the Essary Drive property was $125,000.

The trial court referred this case to a Special Master for findings and recommendations on property classification and value. After a hearing held on April 28-30, 2008, the Special Master summarized her findings in a Final Report. The parties submitted their respective objections to portions of the Special Master's findings for the trial court to consider.[2]

The case came for final hearing before the trial court on January 28, 2009. After considering the evidence, the trial court divided the marital estate and entered a Memorandum Opinion on February 13, 2009. The trial court modified its earlier opinion and entered an Amended Memorandum Opinion on March 13, 2009. The court, incorporating the earlier memorandum opinions, entered a Final Order on June 26, 2009. After considering the evidence, the trial court determined the following assets comprised the marital estate: (a) the appreciation of the Belcaro Drive property, (b) 70% ownership of EBP, (c) the Essary Drive property, (d) the appreciation of the North Carolina condominium, (e) a life insurance policy, (f) the Dublin Drive property,[3] and (g) two Honda automobiles.

Husband then filed a Motion to Alter or Amend Judgment, requesting the trial court to amend the valuations of EBP and the Essary Drive property. The trial court granted the motion in part regarding the value of EBP and denied in part regarding the value of the Essary Drive property. This appeal subsequently ensued.

---

[1] Wife signed a promissory note for a $50,000 loan made from EBP to Eagle Realty.

[2] The trial court entered an order granting a divorce to the parties on November 3, 2008.

[3] Wife's residence.

-3-

## II. ISSUES

Husband raises the following issues, which we restate:

A.  Whether the trial court erred in dividing the marital estate.

B.  Whether the trial court erred in finding that Husband's separate property transmuted into marital property.

C.  Whether the trial court erred in determining that the Amended Operating Agreement should not be enforced.

D.  Whether the trial court erred in its valuation of the Essary Drive property.

E.  Whether the trial court erred in its valuation of the appreciation of the marital property.

Wife raises additional issues:

F.  Whether the trial court erred in awarding an interest in the North Carolina condominium to Husband.

G.  Whether the trial court erred in its valuation of the Emory Business Partners, LLC.

## III. STANDARD OF REVIEW

On appeal, we review the decision of a trial court sitting without a jury de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The classification of property as either marital or separate property is a question of fact for the trial court. *See Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000). Therefore, the trial court's findings with respect to property classification are reviewed de novo with a presumption of correctness below. *Id.* at 144. A trial court is vested with broad discretion when exercising its duty to equitably divide marital assets in a divorce proceeding. *Flannery v. Flannery*, 121 S.W.3d 647, 650 (Tenn. 2003). Therefore, we will not disturb a trial court's division of the marital estate on appeal "unless

-4-

the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements and procedures." *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990).

## IV. DISCUSSION

Tennessee is a "dual property" state, and a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. *See generally* Tenn. Code Ann. § 36-4-121(a)(1) (2005); *see Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Separate property is not subject to division. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party.[4] Tenn. Code Ann. § 36-4-121(a)(1). An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an equitable division. *See Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

Tenn. Code Ann. § 36-4-121(b)(2) defines "separate property" as:

---

[4]Tenn. Code Ann. § 36-4-121(c) (2005) provides:

In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2)(A) - (F) (2005). Marital property is defined as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce. . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A) (2005).

Separate property can become marital property due to the parties' treatment of separate property through the doctrines of commingling and transmutation. *Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002). Commingling occurs when one spouse's separate property is "'inextricably mingled with marital property or with the separate property of the other spouse'" during the marriage. *Id.* (internal citations omitted). Transmutation occurs when a spouse treats separate property "in such a way as to give evidence of an intention that it become marital property." *Id.* "The rationale underlying both of these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate." *Id.* This "presumption can be rebutted by evidence of circumstance or communications clearly indicating an intent that the property remain separate." *Id.*

## Division of the Marital Estate

Husband argues that the trial court erred in dividing the marital estate and in finding that his separate property transmuted into marital property. A great deal of the controversy in this case centered on the division of EBP, which the trial court found to "comprise the majority of the marital estate." Husband asserts that in dividing the marital estate, the trial court should have restored the parties to their respective pre-marital financial situations because the marriage was of a short duration. He also claims that the trial court failed to consider his post-separation contributions to the preservation of the marital property. Husband cites *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988) in support of his position. In *Batson*, one of the factors that the court considered was the "parties were married for only a little more than five years prior to their separation in June, 1985." *Id.* at 860. As a result, the court determined that the parties should be restored to their pre-marital financial conditions. *Id.* at 859.

In the instant case, the trial court specifically addressed and rejected Husband's contention regarding *Batson*. The trial court found that the *Batson* holding was not "completely applicable" to this case. The trial court, relying on *Powell v. Powell*, 124 S.W.3d 100, 107 (Tenn. Ct. App. 2003), noted that the majority of the marital estate in *Batson* consisted of an increase in the value of the husband's separate property during the marriage. *Id.* Here, the parties were married for seven years before the divorce filing, and as the trial court noted, Wife was "instrumental in protecting [H]usband's one-half interest in the ninety-nine plus acres that eventually became Emory Woods." The trial court further concluded:

> [Wife], by engaging in these various transfers resulting in the transmutation of [H]usband's formerly separate property allowed him to defend against the real or perceived threat of creditors. Wife currently holds a 70% ownership share in the LLC [EBP]. Although the Court places less value on [W]ife's contributions towards the development of the subdivision the Court does feel, as did the Special Master, that the parties initially entered into this development concept as a team. Wife did not have the development expertise that [H]usband did, but it appears that she did that which she was asked to do and did for a period of time attempt to participate in the development.

After reviewing the record, we agree with the trial court. Contrary to Husband's assertions, the facts of *Batson* are distinguishable from the facts of this case. First, Husband testified that he transferred the property to Wife. Second, Wife helped preserve the asset after the transfer of the property. At trial, Husband testified, as follows:

Q: When you entered the marriage, Mr. Gilbert, the property that would become Emory Woods, that was your separate property, correct?

A: Yes, sir.

Q: It was owned by you?

A: Yes, sir.

Q: And it only became marital property – Mr. Becker makes a deal about it's a marital asset. It only became a marital asset when you gifted it to Ms. Gilbert [Wife] on the advice of Mr. Howard, correct?

A: Yes, sir.

By Husband's admission, he "gifted" the property that comprised Emory Woods to Wife. Titling the property in both his name and Wife's name, the property transmuted into marital property that was subject to equitable division by the trial court. Husband contends that the trial court erred in finding that transmutation occurred and in dividing the marital property because "the marital estate itself was chiefly comprised of an asset acquired many years before he even met Wife." Because Husband titled the Emory Woods property's deed in Wife's name to protect it from creditors, he asserts that there was no intention to make Emory Woods part of the marital estate. As explained in *Batson*,

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Batson*, 769 S.W.2d at 858 (citing 2 H. Clark, The Law of Domestic Relation in the United States § 16.2, at 185 (1987)); *see also Sickler v. Sickler*, No. 01-A-01-9710-CV-00571, 1999 WL 270186, at *4 (Tenn. Ct. App. M.S., May 5, 1999).

In Husband's view, the evidence rebuts the presumption that he made a gift to the marital estate. We disagree. The evidence demonstrates that the Emory Woods property became marital property because of Husband's treatment of it. Both Husband and Wife testified that the property was titled in her name to protect it from Husband's potential creditors. Specifically, Wife testified at the Special Master's hearing, as follows:

Q: When Mr. Gilbert came into the marriage, did he have a piece of raw land in Anderson County?

A: Yes, he did.

Q: What were the two of you going to do with that piece of land?

A: From the very beginning [Husband] talked about once he finished in Montgomery Cove that we would then develop that subdivision and the would be the last thing we would do, and then at that point in time we would just retire, enjoy life; travel.

Q: And the source of your retirement funding was going to be what?

A: In conjunction with what we thought that he would be receiving from Montgomery Cove would be the Anderson County subdivision.

Q: What was the name of that subdivision to be?

A: Well, it became Emory Woods subdivision.

Q: Now, at some point did that land, that raw land that was titled to Mr. Gilbert, did it become titled in your name as well?

A: Yes, it did.

Q: And did the both of you then subsequently quitclaim your interest over to an LLC?

A: Yes, we did.

Q: What was the name of that LLC?

A: Emory Business Partners, LLC.

Q: And did Emory Business Partners, LLC own the property known as Emory Woods subdivision?

A: Yes, they did – it did.

Q: Now, do you recall when the LLC was established?

A: I believe it was July of 2000.

Q: And at that time who were the owners of that LLC?

A: Myself and Eagle Realty.

Q: And do you recall what your percentage of ownership was of the entity?

A: I had a 99 percent interest and Eagle Realty had a one percent interest.

Along with the above testimony, Wife assumed liability for the land development loan for Emory Woods by signing as the sole guarantor, and she signed a promissory note for a $50,000 loan from EBP to Eagle Rock. By taking on these financial liabilities, Wife contributed to the preservation and development of this marital asset. Thus, we find that the trial court properly found that the Emory Woods property transmuted into marital property. Due to Wife's contributions to protect the Emory Woods property, we find that the evidence does not preponderate against the trial court's division of the marital estate. Accordingly, we affirm.

## Valuation of Marital Estate

Husband and Wife respectively challenge the trial court's valuation of various marital assets. Husband asserts that the trial court erred in determining the value of the Essary Drive property and the appreciation of the Belcaro Drive property. Husband contends that the fair market value assigned to the Essary Drive property is incorrect because it represents a value that does not include the $80,000 acquisition debt. Husband withdrew money from EBP to pay the acquisition debt in violation of the statutory injunction set out in Tenn. Code Ann. § 36-4-106(d). He claims that the value of the Essary Drive property should now reflect that debt considering the trial court ordered him to return the money he withdrew from EBP during the injunction.[5] Regarding the valuation of the Belcaro Drive property, Husband

_____

[5]Wife filed a Petition for Contempt after discovering that Husband made transfers of marital funds in violation of the statutory injunction. After a hearing on the Petition, the trial court found that Husband
(continued...)

argues that fairness requires that the valuation of the property should represent its value at the date of separation instead of the date of divorce.[6]

Wife argues that the trial court erred in including the $50,000 debt to Eagle Rock as a part of the value of EBP. She asserts that the $50,000 debt represents money owed to Gayle Gilbert after she sold her interest in the Emory Woods property to Husband. Wife claims that the debt is Husband's premarital debt that should not be included in the value of EBP.

The value of marital property is a question of fact. *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). The trial court, as the fact finder, puts a value on a marital asset that is within the range of the evidence presented. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). A trial court's valuation and distribution of a marital asset will therefore be given great weight on appeal and will not be overturned unless the evidence preponderates against those findings or they are inconsistent with the factors outlined in Tenn. Code Ann. § 36-4-121(c). *Owens*, 241 S.W.3d at 486; *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998); *see also Inzer v. Inzer*, No. M2008-00222-COA-R3-CV, 2009 WL 2263818, at *4 (Tenn. Ct. App. M.S., July 28, 2009).

We find neither Husband's nor Wife's contentions concerning the trial court's valuation of the above-mentioned marital assets to be meritorious. The evidence in the record does not preponderate against the trial court's valuation of the marital assets.

### Amended Operating Agreement

Husband argues that the trial court erred in holding that the Agreement was unenforceable. The Agreement reduced Wife's interest in EBP to 10%, and gave Eagle Rock a 90% interest. The Special Master found that the Agreement was unenforceable because Wife executed it under duress. On review, the trial court reversed the Special Master's finding, but the court held that the Agreement was unenforceable because Wife effectively repudiated the Agreement.

---

[5](...continued)
had a "proclivity for transferring funds" without a credible purpose. The trial court determined that Husband made those transfers in order to "avoid proper distribution of the marital estate." Indeed, in distributing the Essary Drive property, the trial court noted that "[t]his particular piece of property is a perfect example of husband's machinations with transactions dealing with marital and separate property."

[6] Under Tenn. Code Ann. § 36-4-121(b)(1)(A), "[a]ll marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property."

Particularly, the trial court noted that the Agreement outlined the transfer of ownership in EBP "for and in consideration of one hundred (100%) percent release of liability by First Century Bank." Nevertheless, Wife remained liable on the development loan for over two years after executing the Agreement. For that reason, the trial court held that Husband "did not perform within a reasonable time and [W]ife, prior to the debt being extinguished, repudiated the Agreement."

In Husband's view, the evidence preponderates against the trial court's conclusion that he failed to perform within a reasonable time. He argues that the Agreement was not a contract where time was of the essence. He also claims that Wife failed to effectively repudiate the Agreement because she communicated her repudiation to a third party after Husband began performance of his obligations.

On the other hand, Wife contends that the trial court erred in reversing the Special Master's finding that she acted under duress in executing the Agreement. Wife claims that Husband threatened to sue her for the $50,000 promissory note from EBP to Eagle Rock, and she executed the Agreement to "ward off that threat." Wife asserts that this court must decide whether she is entitled to a 70% interest in EBP if we fail to find that duress was present when she executed the Agreement. She further argues that the trial court should have awarded more than 35% because of her substantial contributions to the development of Emory Woods.[7]

We reject both Husband's and Wife's contentions. Regarding Husband's assertions, a straightforward reading of the Agreement defeats his argument. The Agreement provides:

> Diana S. Gilbert hereby agrees to assign all of her Membership Interest (with the exception of Ten (10) percent which she shall retain) in Emory Business Partners, LLC to Eagle Realty Corporation for and in consideration of one hundred (100) percent release of liability by First Century Bank on the land development loan to Emory Business Partners, LLC.

As the trial court observed, if the intent of the Agreement was to release Wife from liability for the development loan, then the reduction of Wife's interest in EBP would have been contingent on "extinguishment of the debt" or when "the note is paid."

---

[7]Wife also contends that she is entitled to 50% of the appreciated value of the Belcaro Drive property instead of the 25% awarded by the trial court. Wife concedes that Husband paid for the renovation of the home, but points out that it was her "vision" resulted in the appreciated value. In reviewing the record, we do not find that the trial court erred in its division of the appreciated value of the Belcaro Drive property. Husband owned the property prior to entering the marriage, and the evidence does not preponderate against Wife's award in light of her contributions.

In determining a reasonable time for performance of a contract that is silent on the issue, a court must look to the nature and purpose of the contract and the situations of the parties. *Minor v. Minor*, 864 S.W.2d 51, 54 (Tenn. Ct. App. 1993). We determine that a reasonable time for performance had passed for Husband's complete performance of the contract. To adopt Husband's argument leads to an inequitable result. By Wife executing the Agreement, Husband immediately received the benefit for which he bargained for – an increase of ownership interest in EBP. However, he expected Wife to wait over two years to receive the benefit for which she bargained – a release from liability on the land development loan. Considering the nature and the purpose of the Agreement, we hold that the time for performance expired.

Turning to Wife's contentions, the trial court properly found that Wife's 70% interest in EBP was marital property subject to division. We find nothing in the record to support Wife's assertion that she is entitled to more than the 35% interest she was awarded in EBP. Thus, we affirm.

### North Carolina Condominium

Wife takes issue with the trial court's decision to award 25% of the appreciated value of the North Carolina condominium to Husband. She contends that Husband did not make any direct financial contributions to the condominium and cites *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002).

From our review of the record, we find nothing to suggest that the evidence preponderates against trial court's award to Husband. We find Wife's reliance on *Langschmidt* to be misplaced because the record demonstrates that funds from the joint checking account paid expenses related to the condominium. The record includes an exhibit outlining the amount of marital funds that were applied to the mortgage payments and upkeep of the condominium. Because marital funds contributed to preservation and appreciation of the condominium, the condominium became marital property subject to equitable division. Therefore, finding no error in the trial court's decision, we affirm.

## V. CONCLUSION

The trial court's division and valuation of the marital estate is affirmed in its entirety. Costs of this appeal are taxed 75% to the appellant, Drew Edward Gilbert, and 25% to appellee, Diana (Schutts) Gilbert. We remand this cause to the trial court for collection of costs.

_____
JOHN W. McCLARTY, JUDGE