IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2002 Session

## EILEEN ANN SMITH v. ROBERT MAXWELL SMITH

**Direct Appeal from the Circuit Court for Williamson County**
**No. 1-99591      Jeffrey S. Bivens, Judge**

**No. M2001-02164-COA-R3-CV - Filed August 28, 2002**

This is a divorce case. Acting upon the stipulation of the parties, the trial declared the parties divorced. The court determined that the appreciation of Husband's premarital Individual Retirement Accounts (IRAs) was marital property. The court also ruled that a bond account that Husband received from his mother and later titled jointly between the parties remained Husband's separate property. Finally, the court addressed marital debt and alimony. Both parties raise issues regarding the trial court's disposition of the case. We affirm in part, reverse in part, and remand the case to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part;**
**Reversed in Part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Mike W. Binkley, Nashville, Tennessee, for the appellant, Robert Maxwell Smith.

Joanie L. Abernathy, Franklin, Tennessee, for the appellee, Eileen Ann Smith.

### OPINION

Robert Maxwell Smith and Eileen Ann Smith married in August 1986. Dr. Smith was fifty-one and Ms. Smith was thirty-eight at the time of the marriage. Prior to the marriage, Ms. Smith worked as a nurse earning $26,000 a year. Dr. Smith, a physician, earned as much as $500,000 a year. This was the second marriage for each party. Each party had two children from their previous marriages. The union of Dr. and Ms. Smith produced no children.

Shortly after the parties married, Ms. Smith left her position as a nurse. Thereafter, in addition to performing various homemaking tasks, Ms. Smith established and operated a nonprofit animal shelter. At the height of its operation, the animal shelter housed about 125 cats and employed four to six workers. The shelter cost the couple about $50,000 to $60,000 each year.

Dr. Smith had a profitable medical practice during the marriage. Dr. Smith functioned as the parties' financial manager and paid all of the couple's bills. In addition to caring for his own children, Dr. Smith took financial responsibility for Ms. Smith's two children.

Dr. Smith had six retirement accounts before the marriage. Of these six accounts, only two were partially funded during the marriage. There were no contributions made to four of the accounts during the marriage. These four accounts are the Emigrant Keough, the Vanguard Group IRA, the Astoria Federal IRA, and the Chase Traditional IRA. At the date of the parties' marriage, these accounts had a total value of $177,500. By the end of 1999, the total of the accounts had risen to $385,000.

The other two retirement accounts are the Merrill Lynch IRA Rollover and the Smith Barney IRA Rollover. These accounts contain fixed income bonds with stated interest rates. At the time of the parties' marriage, these two accounts totaled $650,000. During the couple's marriage, Dr. Smith deposited marital funds into these accounts. The total marital contribution was approximately $253,500. By December 31, 1999, the total of the two accounts had risen to $2,276,673.

Dr. Smith also acquired a $500,000 Paine Webber bond portfolio from his mother. Dr. Smith subsequently added Ms. Smith's name to the account. This portfolio generated approximately $25,000 each year in interest. Each party had check writing privileges on the account. Ms. Smith, however, did not withdraw money from this account during the marriage.

The trial court declared the parties divorced pursuant to section 36-4-129(b) of the Tennessee Code. First, the court distributed the parties' real property. The court then examined the six retirement accounts that Dr. Smith established prior to the parties' marriage. The court classified the appreciation of the six retirement accounts that took place during the marriage as marital property. The court classified Dr. Smith's premarital contributions to these accounts as his separate property.

The court classified the Paine Webber bond portfolio account as Dr. Smith's separate property. In making its determination, the court found that Dr. Smith successfully rebutted the presumption that he made a gift to the marital estate by titling the account in both spouse's names. Regarding the couple's marital liabilities, the court determined that each party would pay one-half of the $38,285 debt.

Next, the court ruled that Ms. Smith was entitled to alimony. After dividing the couple's personal property, the court awarded Ms. Smith $1,000 as alimony *in solido* in order to "more equitably distribute the value of the personal property." The court also awarded Ms. Smith rehabilitative alimony. In making its award, the court recognized that Ms. Smith would be eligible to withdraw funds from her retirement accounts at the age of 59 and one-half years. Therefore, the court awarded Ms. Smith $1,000 per month until she reached such age.

Finally, the court awarded Dr. Smith $2,500 in attorney's fees. This award represented sanctions against Ms. Smith for her "violations of previous court orders in failing to provide discovery information to [Dr. Smith]."

Both parties appeal the decision of the trial court. Dr. Smith's issues, as stated in his brief, are as follows:

I.      Whether the amendment to Tenn. Code Ann. Section 36-4-121(d) classifies the increase in value of retirement accounts accrued during the course of the marriage as marital property only where the increase in value is related to the spouse's employment.

II.     Alternatively, whether the trial court's equal division of marital property is equitable where the parties were married for only thirteen years and where sixty-two percent (62%) of the marital estate is comprised of the passive appreciation of the Husband's retirement accounts which he owned prior to marriage.

III.    Whether the trial court abused its discretion in failing to require the wife to refund $50,000 to the husband which he paid to her, at her insistence, as reimbursement for her only financial contribution of separate funds to the marriage.

IV.     Whether the trial court abused its discretion in awarding alimony in the absence of financial need, and where the wife has the present capacity for financial independence.

V.      Whether the trial court abused its discretion in its division of marital debt.

Ms. Smith presents two issues for our review. These are as follows:

I.      Whether the trial court erred in classifying the Paine-Webber bond fund as Husband's separate property.

II.     Whether the trial court erred in awarding Wife only $1,000 a month in rehabilitative alimony.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *e.g., Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916

(Tenn. 2000). Further, we give great weight to the factual findings of the trial court which rest on determinations of witness credibility. *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). Accordingly, absent clear and convincing evidence to the contrary, we will not re-evaluate a trial judge's assessment of witness credibility. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

## *Classification and Distribution of the Parties' Property*

Dr. Smith's first issue concerns the trial court's classification of the retirement accounts that he established prior to marriage. The court classified the appreciation of the accounts that took place during the marriage as marital property and awarded Ms. Smith 45% of this appreciation. Dr. Smith contends that any appreciation of the accounts resulting from his premarital contributions should not have been classified as marital property. Rather, Dr. Smith argues that the court should only have classified any marital funds that were contributed to the accounts and their corresponding appreciation as marital property.

Before we address Dr. Smith's concerns regarding the court's classification of the parties' property, it is helpful to review some well-established principles of our divorce jurisprudence. In an action for divorce, Tennessee, as a "dual property" state, draws a distinction between separate and marital property. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Because the Tennessee statutes only allow for the division of marital property upon the dissolution of a marriage, it is of primary importance for the trial court to classify property as separate or marital. Tenn. Code Ann. § 36-4-121(a)(2001); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Therefore, because separate property is not subject to division in an action for divorce, the trial court must initially determine the nature of the parties' property. *Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997); *Brock*, 941 S.W.2d at 900.

The General Assembly defines "separate property" as:

(A) All real and personal property owned by a spouse before marriage;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (2001). Further, the Tennessee legislature provides the following definitions for "marital property" in a divorce action:

(A) "Marital Property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing a complaint for divorce. . . .

(B) "Marital Property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital Property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. § 36-4-121(b)(1) (2001).

The supreme court recently addressed Dr. Smith's first issue in *Langschmidt v. Langschmidt*, ___ S.W.3d. ___ , No. W1999-00434-SC-R11-CV, 2002 Tenn. LEXIS 308 (Tenn. July 9, 2002).[1] In *Langshcmidt*, Husband established two IRAs prior to the parties' marriage. *Id.* at \*6. Husband did not contribute to the IRAs during the marriage. *Id.* The trial court held that, according to the language in section 36-4-121(b)(1)(B) of the Tennessee Code, any appreciation of Husband's IRAs during the parties' marriage was marital property subject to equitable division. *Id.* at \*7.

The supreme court reversed the decision of the trial court. *Id.* at \*25. The court began its analysis by stating that "[r]etirement benefits accrued during the marriage clearly are marital property under Tennessee law." *Id.* at \*22. (citing Tenn. Code Ann. § 36-4-121(b)(1)(B); *Gragg v. Gragg*, 12 S.W.3d 412 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996)). The court then stated that the issue was "whether a premarital IRA is a retirement benefit under Tenn. Code Ann. § 36-4-121(b)(1)(B)." *Id.* at \*23. Because the premarital IRAs at issue were funded with premarital assets and did not represent deferred compensation during the marriage, the court concluded that "Husband's premarital IRAs are not retirement benefits under Tenn. Code Ann. § 36-4-121(b)(1)(B)." *Id.* at \*24.

After concluding that Husband's IRAs were not retirement benefits, the court determined that Husband's IRAs remained his separate property according to section 36-4-121(b)(2)(A) of the Tennessee Code. *Id.* at \*26. This was due to fact that Husband owned the IRAs and funded them prior to the parties' marriage. *Id.* The court then stated that the appreciation of the IRAs during the

---

[1] The supreme court filed its opinion in *Langschmidt* on July 9, 2002, the same day of oral argument in the case *sub judice*.

marriage could properly be considered marital property if "both parties 'substantially contributed to [the IRA's] preservation and appreciation.'" *Id.* (citing Tenn. Code Ann. § 36-4-121(b)(1)(B), -121(b)(2)(C)). In order to support a finding of substantial contribution, the court required some connection between the marital efforts of a spouse and the appreciation of the separate property. *Id.* at \*15, \*26. The court determined that the evidence failed to support a finding that "Wife substantially contributed to the preservation and appreciation of Husband's IRA assets." *Id.* at \*26. Accordingly, the court held that "these IRA assets, including their appreciation during the marriage, are Husband's separate property under sections 36-4-121(b)(2)(A) and 36-4-121(b)(1)(B)" of the Tennessee Code. *Id.* at \*26-27.

In this case, Dr. Smith had six IRAs. Dr. Smith did not contribute to four of these IRAs during the marriage. We will address the classification of those four IRAs first. A slightly different analysis is required for the two IRAs that were partially funded during the parties' marriage.

As *Langschmidt* provides, the four IRAs that Dr. Smith funded prior to marriage are properly classified as his separate property. While the trial court correctly recognized that the funds Dr. Smith contributed to those IRAs prior to marriage are his separate property, the court classified the appreciation of those IRAs as marital property. According to *Langschmidt*, the appreciation of the IRAs could only be classified as marital property if Ms. Smith substantially contributed to the preservation and appreciation of Dr. Smith's IRAs. The record does not support such a conclusion. To the contrary, the record illustrates that the appreciation of these accounts was due to market factors and the compounding of interest earned on the investments. The record fails to provide a nexus between any of Ms. Smith's contributions during the marriage and the appreciation of the IRAs. Accordingly, we reverse the decision of the trial court. The Emigrant Keough, the Vanguard Group IRA, the Astoria Federal IRA, and the Chase Traditional IRA are properly classified as Dr. Smith's separate property.

Dr. Smith also established and funded the remaining two IRAs prior to the parties' marriage. In contrast to the four IRAs mentioned above, however, Dr. Smith contributed marital funds to these two accounts. The court classified the funds that Dr. Smith contributed prior the parties' marriage as his separate property. The court classified the appreciation of those funds from the date of the parties' marriage as marital property. The court also classified the contributions Dr. Smith made with marital funds and their corresponding appreciation as marital property.

As we stated above, the court was correct in classifying Dr. Smith's premarital contributions as his separate property. The court erred, however, in classifying the appreciation of those funds as marital property. As above, the record establishes that the appreciation of Dr. Smith's premarital contributions was due solely to market factors and the compounding of the interest from the various investments. The record provides no connection between any of Ms. Smith's marital contributions and the appreciation of Dr. Smith's premarital contributions. Accordingly, Dr. Smith's premarital contributions and the corresponding appreciation of those contributions are properly classified as Dr. Smith's separate property.

We must continue our analysis of these two IRA accounts, however, because Dr. Smith deposited marital funds into these accounts. From 1987 to 1997, Dr. Smith made annual contributions to the accounts. Therefore, in addition to separate funds and their corresponding appreciation, the accounts contained marital funds and the funds associated with their appreciation.

This Court has recognized instances where separate property can become part of the marital estate due to the parties' treatment of the separate property. The doctrines of transmutation and commingling provide an avenue where separate property can become marital property. *Langschmidt*, 2002 Tenn. Lexis 308, at *17-18; *Hofer v. Hofer*, No. 02A01-9510-CH-00210, 1997 Tenn. App. LEXIS 74 at *8-9 (Tenn. Ct. App. Feb. 3, 1997) (citing *Pope v. Pope*, No. 88-58-II, 1988 WL 74615, at *3 (Tenn. Ct. App. 1988)). This Court has previously explained these doctrines as follows:

> Two related doctrines of community property have made their appearance in the marital property cases. The first of these is commingling, according to which separate property becomes marital property if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. The second doctrine is that of transmutation. This occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both of these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (1987); *Hofer,* 1997 Tenn. App. Lexis 74, at *8-9.

The doctrine of commingling is relevant to our analysis of the two IRA accounts. The record establishes that Dr. Smith entered the marriage with a total of $650,000 in these accounts. Because the accounts consisted of bonds with fixed interest rates, Dr. Smith's accountant, Lester Hirsh, determined that the accounts generated an average rate of return of 8.5%. Applying this rate of return, Mr. Hirsh was able to determine the value of the accounts that was attributable to Dr. Smith's premarital deposits. Mr. Hirsh performed a similar analysis with regards to the contributions that consisted of marital property. This allowed Mr. Hirsh to segregate Dr. Smith's separate property and its associated gains from the parties' marital property and its corresponding gains. Accordingly, the separate property in these accounts was not inextricably commingled with the marital property in the

accounts. It follows that Dr. Smith's separate property in the accounts did not become marital property by virtue of the doctrine of commingling.

The trial court erred when it classified the appreciation from Dr. Smith's premarital deposits in the two IRAs as marital property. We remand the case in order for the trial court to determine the value of the accounts that is attributable to Dr. Smith's premarital deposits. The remaining value contained in the two IRA accounts is properly classified as marital property, subject to equitable distribution.

Ms. Smith also takes issue with the trial court's classification of the parties' property. Ms. Smith contends that the trial court erred when it classified the Paine Webber Municipal Bond Stock Portfolio Account as Dr. Smith's separate property. Ms. Smith argues the account became marital property according to the doctrine of transmutation.

Dr. Smith obtained this account from his mother; he later established the account with Paine Webber. At some point during the parties' marriage, Dr. Smith added Ms. Smith's name to the Paine Webber account. Dr. Smith stated that he added Ms. Smith's name to the account in order for her to have immediate access to cash in the event of his death. Mr. Hirsh confirmed this testimony, stating that he advised Dr. Smith that "if Eileen's name appears on a certain asset, then she's going to inherit that upon your death." Mr. Hirsh concluded that Dr. Smith only added Ms. Smith's name as a part of his estate planning. The parties' did not deposit additional funds into the account after Dr. Smith received it from his mother. Although Ms. Smith had check writing privileges after her name was added to the account, she did not write a check from the account during the parties' marriage.

The trial court made specific findings regarding this account. In classifying the account as Dr. Smith's separate property, the court recognized that there is a presumption that Dr. Smith made a gift to Ms. Smith when he added Ms. Smith's name to the account. The court found that Dr. Smith rebutted the presumption, however, basing its conclusion on "the testimony of the parties, the credibility of the parties, as well as the testimony of Mr. Lester Hirsh by deposition."

The record does not preponderate against the trial court's conclusions. First, the trial court found Dr. Smith's testimony to be more credible than Ms. Smith's testimony. The record fails to provide a reason for us to re-evaluate the court's credibility determination. Second, Dr. Smith's testimony regarding the parties' communications on the issue supports the court's finding. Dr. Smith's testimony established that he told Ms. Smith that he was adding her name to the account so she could have accessible funds when he died. Mr. Hirsh's testimony supports Dr. Smith's testimony. Finally, circumstances support the trial court's finding. Ms. Smith did not use the account during the couple's marriage, though she used the couple's other jointly named accounts.

Also, no marital funds went into the account. Accordingly, we affirm the trial court's decision to classify the Paine Webber Municipal Bond Portfolio as Dr. Smith's separate property.

In Dr. Smith's next issue, he contends that the court abused its discretion when it failed to require Ms. Smith to reimburse him $50,000. When the parties married, Ms. Smith contributed $50,000 to the purchase of their New York home. When the parties' sold the New York home in October 1998, Ms. Smith asked Dr. Smith to give her back the $50,000 she originally contributed. In order to "keep peace in the house," Dr. Smith complied with Ms. Smith's request.

Dr. Smith argues that Ms. Smith should reimburse him for this payment because it was the only financial contribution she made during the marriage. In support of Dr. Smith's argument, he states that circumstances surrounding a spouse's acquisition of property may create equities that the court can adjust when issuing a decree of divorce. *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983). After reviewing the record, we have determined that the court did not abuse its discretion in refusing to order Ms. Smith to pay $50,000 to Dr. Smith. There is nothing in this case to support Dr. Smith's request; accordingly, we affirm the decision of the trial court on this issue.

Regarding Dr. Smith's next issue, he contends that the trial court erred when it distributed the parties' marital debt. The marital debt totaled over $38,000. The court, citing principals of equity, divided the debt equally between the parties. Dr. Smith argues that it would be more equitable to assign Ms. Smith two-thirds of the marital debt.

The bulk of the parties' marital debt was credit card debt. The remainder consisted of Ms. Smith's medical bills. Ms. Smith incurred some of the credit card debt after making purchases for the home. The credit card debt also consisted of clothing purchases. Finally, Ms. Smith used the credit cards to benefit her two adult children from her previous marriage, accruing almost $17,000 of debt for this purpose.

Courts must divide the parties' marital debts equitably. *Goodman v. Goodman*, 8 S.W.3d 289, 298 (Tenn. Ct. App. 1999). In distributing the marital debts in an equitable fashion, courts should consider the following: "(1) which party incurred the debt, (2) the purpose of the debt, (3) which party benefitted from incurring the debt, and (4) which party is better able to repay the debt." *Id.* (citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). Courts should also consider the factors found in section 36-4-121(c) of the Tennessee Code. *Kinard v. Kinard*, 986 S.W.2d 220, 233 (Tenn. Ct. App. 1998).

After reviewing the record, we conclude that the trial court did not err in making its equitable distribution of the parties' marital debt. Dr. Smith did not limit or object to Ms. Smith's use of the credit cards. Ms. Smith used the credit cards to benefit both parties, as well as her two children. Dr.

Smith candidly admitted that he voluntarily supported Ms. Smith's two adult children and enjoyed a good relationship with them. Further, Dr. Smith knew that Ms. Smith used the credit cards to support her children and did not object to this practice. Finally, Dr. Smith is more capable of paying the debt, especially in light of our decision in this case. Accordingly, we affirm the trial court's decision to allocate the marital debt equally between the parties.

In holding that the trial court erred in classifying Dr. Smith's IRAs, we have significantly reduced the size of the marital estate as found by the trial court, and consequently, increased the value of Dr. Smith's separate property. On remand, the trial court must determine the value of Dr. Smith's separate property. Additionally, because "[t]he value of the separate property of each party" is a factor in making an equitable division of marital property, we remand the case in order for the trial court to reconsider its equitable distribution of the parties' marital property. Tenn. Code Ann. § 36-4-121(c)(6) (2001).

### *Alimony*

The court awarded rehabilitative alimony to Ms. Smith. Dr. Smith contends that the court erred in its award, arguing that there is no need for an award of alimony in this case. (Appellant's brief, p. 40). Based on our review of the record, the trial court's award of alimony is not contrary to the preponderance of the evidence. However, in light of our remand to the trial court to reconsider its distribution of the parties' marital property in accordance with this opinion, the court must reconsider its award of rehabilitative alimony as well. Section 36-5-101(d)(1)(G) & (H) of the Tennessee Code states that the trial court must consider the separate assets of each party in addition to the distribution of the parties' marital property when awarding alimony. Accordingly, we remand this case to the trial court for the reconsideration of its award of alimony to Ms. Smith.

### *Conclusion*

We affirm in part and reverse in part the decision of the trial court. The case is remanded to the trial court for proceedings consistent with this opinion. Costs of the appeal are taxed equally between the parties.

_____
DAVID R. FARMER, JUDGE