IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 10, 2012 Session

**GWENDOLYN ANN CRADIC v. KENNETH WAYNE CRADIC**

**Appeal from the Chancery Court for Hawkins County**
**No. 16980      Thomas R. Frierson, II, Chancellor**

**No. E2012-00227-COA-R3-CV-FILED-FEBRUARY 22, 2013**

This case focuses, in the context of the parties' divorce, on the distribution of their marital assets and debts. Gwendolyn Ann Cradic ("Wife") filed a complaint for divorce against Kenneth Wayne Cradic ("Husband") on October 24, 2008. The parties went to trial in October 2011 on the issues of fault and division of property. The court awarded Wife a divorce on the ground of inappropriate marital conduct. It then divided the parties' assets and debts. Husband appeals the trial court's classification of one asset and its division of marital property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Keith A Hopson, Kingsport, Tennessee, for the appellant, Kenneth Wayne Cradic.

Phillip L. Boyd, Rogersville, Tennessee, for the appellee, Gwendolyn Ann Cradic.

**OPINION**

I.

The parties were married in October 2000. They separated in October 2008 after Wife had filed for divorce. Husband was 61 years old and Wife was 58 at the time of trial. This was the third marriage for each.

The evidence shows that the parties began dating and moved in together in 1999, approximately one year before their marriage. Both parties owned a home before the

marriage. Husband moved into Wife's home on Hidden Valley Drive, Rogersville, and then rented out his home on Heritage Drive in the same city. Wife testified that he never shared the rental money with her. Wife worked until she suffered a disabling knee injury in 2006. Thereafter, she was a homemaker. Wife's income at the time of trial was her $799 per month social security disability check and the $200 to $300 per month extra that she earned babysitting or sitting with an elderly friend.

Husband worked until 2009, when he also became disabled. He worked at Holliston[1] from 1983 until 2009. During this period, he paid into his pension plan with Central States Pension. At the time of trial, Husband received a social security disability check of $1,452 per month. Husband also received $166.75 per month from his Central States Pension. In addition, he received $350 to $450 per month from the rental of his house.

The parties each owned separate property at the time of the divorce, *i.e.* their respective homes as well as some items of personalty. At trial, the marital assets were found to be the following: some portion of Husband's pension, the increase in value of Wife's home, a 2006 Nissan Altima, a 2003 BMW, a 1999 Dodge truck, a 1996 Chevrolet Geo, a 1991 pontoon boat, a Tracker boat, a motorcycle, a four-wheeler, appliances, a lawn mower, and a utility trailer. There were also some guns acquired during the marriage as well as a gun safe. The parties also had marital debt, including a Bank of America credit card, a Goody's credit card, a Wal-Mart credit card, and various small loans from family and friends. In addition, there was a mortgage on Wife's home, which was refinanced during the marriage, and debts owed on the 2006 Nissan and the 2003 BMW.

The trial court found Wife's separate real property, *i.e.* the home, to be worth $125,000 at the time of trial. It also found that this property had been significantly improved during the marriage and that these improvements had increased its value by $40,000. The court found that this $40,000 increase was marital property. It awarded all of it to Wife. She was directed to pay the remaining mortgage balance of approximately $17,000. Husband's home and lot were valued at $80,000. The court found that the value of this separate asset of Husband's had also increased during the marriage as the parties had paid off the mortgage of approximately $15,000. The increase in the value of the home and lot was awarded to Husband as part of the equitable division of marital property. Also, as separate property, Husband was awarded his firearms and tools acquired before the marriage, as well as a bedroom suite, freezer, and hunting and fishing equipment. Wife was also awarded, as separate property, her home furnishings acquired prior to the marriage.

In the distribution of marital assets, Wife was awarded her 2006 Nissan burdened with

---

[1] His employer is not otherwise identified in the record before us.

its debt.  Husband was awarded the 2003 BMW and ordered to pay its debt.  Husband was also awarded the 1999 Dodge truck, the 1996 Chevrolet Geo, the Tracker boat, motorcycle, four-wheeler and utility trailer.  Wife was awarded the 1991 pontoon boat which was "restored during the marriage."

The court made a finding that Wife had received two large sums of money during the marriage – monies that Husband did not know about, *i.e.,* a back pay award of $13,800 from the Social Security Administration and $18,500 from her 401(k) account; the court also found that these funds were primarily spent, during the marriage, on the marital home, attorney's fees, and monthly expenses.  Similarly, and unbeknownst to Wife, Husband, shortly after separation, had withdrawn $5,000 from a checking account.  These funds were spent on marital expenses.  The court thus declined to make any type of award with respect to these three distributions of funds.  Finally, the court awarded Wife 25 percent of Husband's pension as a part of her division of marital property.  Husband timely filed a notice of appeal.

II.

Husband raises the following issues for our review:

> Whether the trial court erred in awarding Wife the entire amount of the increase in value of her home, which was based on improvements made during the marriage, since the increase in value is a marital asset.
>
> Whether the trial court erred in awarding the 1991 pontoon boat to Wife.
>
> Whether the trial court erred in awarding Wife 25 percent of Husband's pension.

III.

This Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate.  Separate property is not subject to division.  In contrast, Tenn. Code Ann. §36-4-121(c) outlines

-3-

the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and §36-4-121(a)(1) only requires an equitable division.

* * *

This court will not disturb the trial court's division of the marital estate "unless the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements or procedures."

***McHugh v. McHugh***, E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. E.S., filed Apr. 16, 2010)(citations omitted). *See also **Manis v. Manis***, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (appellate courts "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

## IV.

### A.

Husband asserts that the trial court erred in its division of property, by (1) awarding Wife the entire increase in value of her home, (2) awarding Wife the pontoon boat that Husband owned before the marriage, and (3) awarding Wife 25 percent of Husband's pension.

### B.

There is no dispute in this case that Wife's home was separate property. By the same token, there is no dispute that the increase in its value during the marriage was a marital asset. Husband simply asserts that the trial court erred in awarding the entire value of the increase to Wife as part of the property division.

As this Court has often explained:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because

-4-

it is not mathematically equal, or because each party did not receive a share of every item of marital property. In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results.

*Payne v. Payne*, E2006-02467-COA-R3-CV, 2007 WL 2668588 at *4 (Tenn. Ct. App. E.S., filed Sep. 12, 2007)(citations omitted). The trial court is to consider the following factors in making an equitable distribution:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. §36-4-121(c)(2010).

C.

The trial court's distribution of the parties' net marital estate is as reflected in the following schedule:

| Asset/Debt | Wife | Husband |
|---|---|---|
| 2006 Nissan Altima (net) | $ 7,600 | |
| 2003 BMW | | $ 8,975 |
| Subject to debt | | No Amt. Proved |
| 1999 Dodge Truck | | 4,665 |
| 1996 Chevrolet Geo | | 1,000 |
| Tracker Boat | | 1,500 |
| Motorcycle | | 1,500 |
| Appliances and Lawn Mower | 1,700 | |
| Four Wheeler | | 800 |
| Utility Trailer | | 400 |
| Guns | | 480 |
| Gun Safe | | 500 |
| 1991 Pontoon Boat | 2,000 | |
| Increase in Value - Husband's Home | | 15,000 |
| Increase in Value - Wife's Home | 40,000 | |
| 10% of Husband's Pension | | No Value Proved |
| 25% of Husband's Pension | No Value Proved | |
| Marital Debts | (3,400) | (3,500) |
| | $47,900 | $31,320 |
| | ===== | ===== |

-6-

When the assets and debt of the marriage, for which there was evidence of value or amount, are considered, Wife's net allocation amounts to $47,900, or 60.5 percent of the net marital estate with assigned values or amounts, and Husband's share is $31,320, or 39.5 percent. Thus, Wife received $47,900 plus 25 percent of Husband's pension, and Husband received $31,320 plus 10 percent of the pension. The remaining 65 percent of the pension was awarded to Husband as his separate property.

D.

At the time of trial, the parties had been married for 11 years. They were of similar age and health. Both had physical disabilities that prevented them from working. Husband's income, however, was approximately twice that of Wife's. This would give Husband a much greater ability to support himself and make future asset acquisitions. Neither party was involved in the education or earning power of the other. Both parties contributed to the net marital estate as wage earners, and Wife also contributed as a homemaker. The trial court did not find that there had been any wasteful expenditures or dissipation of assets, and the evidence does not preponderate against this determination.[2] Both parties had similar estates at the time of the marriage, and a similar amount of separate property at the time of trial. As previously stated, Husband's social security disability benefits were nearly twice those of Wife's, and Husband is slightly older so he will be able to draw regular social security benefits earlier than Wife. Wife was saddled with a much greater share of the parties' debt, as she was left with a mortgage, a car debt, and other smaller debts.

E.

Husband argues that the trial court erred in awarding Wife the 1991 pontoon boat, because he, without question, owned this asset before the marriage. It is well-settled, however, that "[s]eparate property can become marital property due to the parties' treatment of separate property through the doctrines of commingling and transmutation." *Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002). Transmutation occurs when a party treats separate property "in such a way as to give evidence of an intention that it become marital property." *Id.* The reasoning underlying both of these doctrines is that when a party handles his or her separate property in a way that indicates the property is now marital property, a "rebuttable presumption of a gift to the marital estate" is created. *Id.* This "presumption can

_____

[2] Wife testified that she used the money from the back pay disability award to pay attorney's fees, for the expense of depositions, living expenses, and some was donated to her church. Wife testified that the money from her 401(k) account was used for food, clothes, gifts, medical bills, and church.

be rebutted by evidence of circumstance or communications clearly indicating an intent that the property remain separate." *Id.*

In this case, Husband admitted that the parties did repairs to the pontoon boat during the marriage. Wife testified that they spent $1,000 of marital funds re-upholstering the boat because it was badly damaged. Husband testified that, at the time of trial, the boat was worth $2,000. The trial court obviously felt that Husband had handled this asset in such a way as to create a rebuttable presumption that he had gifted it to the marital estate. There was no evidence introduced to show any "circumstance or communications clearly indicating" Husband's intent that the boat remain his separate property. *Id.* The evidence does not preponderate against the trial court's implicit finding that this asset was transmuted into marital property.

F.

Finally, Husband argues that the trial court erred in awarding Wife 25 percent of his pension, when only 35 percent of the pension was paid in during the marriage. The proof showed that Husband worked at Holliston for 26 years, and that he paid into his pension plan during this entire period. Thus, Husband worked and paid into the plan a total of 26 years, and he was married to Wife for 9 of those years, or about thirty-five percent of the time. Husband thus argues that it was inequitable for the court to award Wife 25 percent of his pension, and that she should have received, at most, 17.5 percent, representing half of the amount of the pension that was paid in during the marriage.

Husband's argument ignores this Court's often-quoted precept that "division of the estate is not rendered inequitable simply because it is not mathematically equal." *See Payne v. Payne*, E2006-02467-COA-R3-CV, 2007 WL 2668588, *4 (Tenn. Ct. App. E.S., filed Sep. 12, 2007). Rather, it is the total, final result that must be examined for equity, not the division of each individual asset. *Id.* The record does not contain any information regarding the value of Husband's pension, but the record reflects that he only draws $166.75 per month from it. Therefore, the total value could not have been that significant, and a 7.5 percent difference would not be enough to render the total distribution inequitable.

V.

When the facts in this case are considered in light of the Tenn. Code Ann. §36-4-121(c) factors, we cannot say that the evidence preponderates against the trial court's distribution of the net marital estate. This being said, we find no abuse of discretion on the part of the trial court in its division of the net marital estate.

VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Kenneth Wayne Cradic. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE