IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2019 Session

## JAMES KIRBY v. MEMPHIS LIGHT GAS & WATER

**Appeal from the Circuit Court for Shelby County**
**No. CT-002393-15      Jerry Stokes, Judge**

_____

### No. W2017-02390-COA-R3-CV

_____

The driver of a delivery truck was injured when the delivery truck collided with a utility truck. The trial court determined that the utility company was 70% at fault and the delivery driver was 30% at fault. The court awarded the delivery driver $105,000 in damages. On appeal, the utility company argues that the trial court erred in including future medical expenses in its calculation of damages and that the delivery driver failed to mitigate his damages. We find no error in the trial court's award of damages and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Thomas Roosevelt Branch, Memphis, Tennessee, for the appellant, Memphis Light, Gas, and Water.

Jason Joseph Yasinsky, Memphis, Tennessee, for the appellee, James Kirby.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 2014, an Isuzu "bob truck" driven by James Kirby collided with a bucket truck driven by Terrance Davis for his employer, Memphis Light, Gas and Water ("MLGW" or "the Defendant"). The details of the accident are not relevant to this appeal.

The accident injured Mr. Kirby's back. After a course of physical therapy, he attempted to return to work but experienced increased pain. An MRI showed a herniated

disc with extrusion at L4-L5, and Mr. Kirby was referred to Dr. John Brophy, a neurosurgeon, whom he saw in October 2014. Dr. Brophy diagnosed left L-4/5 radiculopathy and recommended surgery. In 2003, Mr. Kirby had undergone similar back surgery at L5-S1. He testified at trial that it took approximately a year and a half for him to recover from the prior surgery. In light of his previous experience with back surgery and the fact that his wife was in nursing school (so that he was the sole breadwinner for the family), Mr. Kirby declined surgery at that time.

Mr. Kirby filed suit for negligence against MLGW on June 5, 2015.[1] On August 3, 2017, Dr. Lawrence Schrader, an orthopedic surgeon, performed an independent medical examination upon Mr. Kirby at the request of his attorney. Dr. Schrader reviewed Mr. Kirby's medical history and noted that, whereas he had once worked driving a delivery truck, he was now doing lighter work that allowed him to sit or stand. Mr. Kirby continued to have pain in the lower back, worse on the left side than on the right, and the pain radiated down into his left leg. Although he still had concerns about surgery, Mr. Kirby had not ruled out having surgery at some point in the future. Dr. Schrader opined, to a reasonable degree of medical certainty, that the course of treatment followed by Mr. Kirby was reasonable with the diagnosis of a herniated disc at L4-L5.

With respect to the necessity for future medical treatment, Dr. Schrader testified (by deposition) as follows:

> A. . . . So, my feeling is that he is still a candidate for those procedures that were offered, which would include both epidural injections, as well as having the spinal decompression surgery that Dr. Brophy had recommended.
> . . . .
> Q. In your opinion, would those procedures relieve or lessen Mr. Kirby's pain?
> MR. BRANCH [Attorney for MLGW]: Same objection [relevance].
> THE WITNESS: The goal of the procedures would be to relieve his pain. And the epidural injections are, obviously, a less invasive method. They are not going to anatomical[ly] change things deep in his spine, but they could benefit, so that is worthy of trying.
> There are people that have [a] herniated disk and that pinch a nerve and don't have much pain. So, that is the state that you want to get him to. The surgery would be only—a surgeon would only recommend a surgery if they thought they were going to make the patient better, not just different.

---

[1] The driver of the bucket truck, Terrance Davis, was also named as a defendant, but he was dismissed from the lawsuit by consent order entered on December 9, 2015.

BY MR. YASINSKY [Attorney for Mr. Kirby]:

Q. Do you think that those future medical procedures that were recommended or were mentioned by Dr. Brophy, were those reasonable measures?

A. Yes.

Q. If Mr. Kirby, whom I believe in your report, you said that he has not completely ruled out undergoing these procedures in the future, is that correct?

A. Yes.

Q. If he were to go through with [an] invasive procedure such as the surgery you described, can you provide us with an estimate with the range of cost that that may entail?

A. Yes.

Dr. Schrader went on to testify that the total cost for decompression surgery and post-surgery therapy in West Tennessee would range from approximately $59,500 to $76,500. Based upon his experience, Dr. Schrader estimated the cost of a course of three epidural steroid injections to be about nine thousand dollars.

Dr. Schrader testified that it is possible that Mr. Kirby's pain "could subside without surgery." But, he stated, the only way to repair the disk injury is to have the surgery. Dr. Schrader opined that surgery is medically necessary to correct the L4-L5 disk herniation in order "to take the pressure off the nerve root."

The case proceeded to a bench trial on October 12, 2017. Mr. Kirby's proof consisted of his testimony as well as the testimony of a representative of his employer, a neighbor, and his wife; he also submitted the expert medical testimony of Dr. Schrader via deposition. The Defendant presented the testimony of its driver, Mr. Davis. In closing arguments, Mr. Kirby asked the court to award $68,500 for future medical treatment based upon Dr. Schrader's testimony.

On October 13, 2017, the trial court issued its ruling from the bench. The court noted Dr. Schrader's testimony that "future medical treatment, in the event plaintiff elects to have surgery, will cost about $68,500.00." After reviewing all of the evidence, the court concluded that MLGW was 70% at fault and Mr. Kirby was 30% at fault. The court held that, "[c]onsidering all the medical bills, lost wages, impairment rating, loss of enjoyment of life, future medical expenses, the Court fixes plaintiff's damages at $150,000.00." After subtracting an amount equal to 30% for plaintiff's portion of fault, the court awarded a judgment of $105,000.00 plus court costs to Mr. Kirby. The terms of the ruling were incorporated into the second amended final order entered on May 9, 2018.[2]

---

[2] The trial court's two previous orders were remanded by this court for lack of subject matter jurisdiction

On appeal, MLGW asserts that the trial court erred in two respects: (1) in including in its calculation of damages $68,500 in future medical expenses; and (2) in failing to properly consider evidence that Mr. Kirby failed to mitigate his damages.

STANDARD OF REVIEW

The issue of "'[w]hether the trial court has utilized the proper measure of damages'" is a question of law subject to de novo review. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998)). The amount of damages awarded is a question of fact and is, therefore, subject to review under the preponderance of the evidence standard. *Id.* We afford great weight to factual findings that are based upon the trial court's assessment of a witness's credibility. *Smith v. Smith*, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002).

A trial court's decisions regarding the admission or exclusion of evidence are reviewed under an abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.,* 134 S.W.3d 121, 131 (Tenn. 2004). A trial court abuses its discretion "when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill,* 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id.*

ANALYSIS

I. Future medical expenses.

The Defendant argues that the trial court's award of future damages was based upon speculation. According to the Defendant, the trial court erred in considering and including in its calculation of damages the testimony of Dr. Schrader that the cost of future surgery was $68,500 because Mr. Kirby "repeatedly testified that he elected not to have surgery."

In a negligence case, the plaintiff "may recover damages from the other person for all past, present, and prospective harm." *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *13 (Tenn. Ct. App. Jan. 28, 2002). The damages for prospective harm include "the reasonable cost of the medical services that will probably be incurred because of the lingering effects of the injuries caused by the negligent

---

due to the trial court's failure to adjudicate all of the claims.

person." *Id.* As the Defendant emphasizes, "damages for future medical expenses may not be awarded when the damages are based on speculation or conjecture." *King v. Gen. Motors Corp.*, No. M2004-00616-COA-R3-CV, 2005 WL 3508016, at *6 (Tenn. Ct. App. Dec. 22, 2005). In order to prevent an award of future medical expenses from being based upon speculation, a person seeking such an award must present evidence of the following:

> (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-of-fact to reasonably estimate the cost of the expected treatment.

*Henley*, 2002 WL 100402, at *13; *see also King*, 2005 WL 3508016, at *6.

We begin with the first element of proof—that additional treatment is reasonably certain to be required in the future. This component of a claim for future medical expenses requires proof "with some degree of certainty" that the plaintiff "will undergo future medical treatment for the injuries caused by the defendant's negligence." *Henley*, 2002 WL 100402, at *14. The "reasonable certainty" standard does not require proof to an absolute certainty. *Id.* Rather, the plaintiff must prove "that he or she will, *more probably than not*, need these medical services in the future." *Id.* (emphasis added). In the present case, Dr. Schrader established that, more probably than not, Mr. Kirby will need surgery in the future to correct his herniated disc because surgery is the only way to relieve the compression on the nerve that is causing Mr. Kirby's pain. Although Mr. Kirby has declined surgery to date, he has not ruled it out in the future.

As to the second prong of the required proof—the estimated cost of the surgery— MLGW presented no opposing evidence at trial regarding the estimated costs given by Dr. Schrader and does not challenge his estimates on appeal. The Defendant's argument is focused upon the first prong of the proof required.

Mr. Kirby, through the testimony of Dr. Schrader and his own testimony, satisfied the first prong (necessity) of the proof required to take his future medical expenses out of the realm of speculation, and the testimony of Dr. Schrader met the second prong (reasonable estimate of cost). Contrary to the Defendant's argument, the testimony is not speculative or conjectural. The trial court did not abuse its discretion in relying upon the testimony of Dr. Schrader in awarding future damages.

II. Mitigation.

The Defendant next argues that the trial court failed to consider Mr. Kirby's duty to mitigate his damages in its calculation and assessment of damages and that Mr. Kirby failed to use reasonable diligence to care for his injuries.

The doctrine of mitigation of damages requires that "one who is injured by the wrongful or negligent act of another, whether by tort or breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage." *Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App. 1971); *see also Starkey*, 244 S.W.3d at 353. To the extent that the injured party fails to exercise reasonable care to mitigate his or her damages, he or she cannot recover those damages. *Kline v. Benefiel*, No. W1999-00918-COA-R3-CV, 2001 WL 25750, at *7 (Tenn. Ct. App. Jan. 9, 2001). An "injured party is not, however, required to mitigate damages where the duty would impose an undue burden or be impossible under the circumstances." *Starkey*, 244 S.W.3d at 353. The key factor in determining whether a plaintiff has fulfilled his or her duty to mitigate "'is whether the method he [or she] employed to avoid consequential injury was reasonable under the circumstances existing at the time.'" *Kline*, 2001 WL 25750, at *7 (quoting *Action Ads, Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979)).

The Defendant argues that Mr. Kirby "abruptly terminated" treatment on September 8, 2014, and that Dr. Brophy released him to return to work at full duty without limitation. Mr. Kirby complained at trial that he continued to have pain after he returned to work, ultimately had to resign from his job, and was no longer able to participate in certain activities. Yet, the Defendant asserts, Dr. Brophy offered Mr. Kirby the options of back surgery and epidural steroid injections, both of which he declined. The Defendant argues that Mr. Kirby failed to exercise due diligence and chose to do nothing when there were treatment options available. Instead, Mr. Kirby quit his job and took a lower paying job, resulting in a significant amount of lost wages.

We disagree with MLGW's characterization of the proof concerning the reasonableness of Mr. Kirby's decisions regarding treatment. When asked about Dr. Brophy's recommendation of surgery, Mr. Kirby testified as follows:

Q. Did you have that surgery?
A. No, sir.
Q. Why not?
A. Scared. And at the time I had just put my wife in school to be a nurse, and I was the only one working. So she couldn't take care of me if I had surgery. I was the only source of income in my house.
Q. Did you have any children with you in the household at that time?
A. Yes, sir.
Q. Who was that?
A. I had my oldest son and my stepson, my young stepson.
Q. Why were you scared of surgery?
A. Because I went through it once. Then I researched, and they giving you needles in your back. I had that, and it did nothing. Then the doctors tell

- 6 -

you the risk it is, what can happen because of where they sticking you at, so I was not—I was not prepared for them to take the risk of doing that.

Mr. Kirby testified that his previous experience with back surgery and the long recovery time factored into his decision to decline surgery:

A. Yes, sir. I had the surgery. Once again you can't fend for yourself. You got staples and stitches in your back, you can't move. I had to have an extension seat for the commode because I couldn't set like I'm sitting in the chair. I had to be taught how to get in and out of a vehicle. I had to be took care of.
Q. How long did it take you to recover from that surgery?
A. Oh, about a year and a half.

Mr. Kirby's last visit to Dr. Brophy occurred on September 8, 2014. At trial, plaintiff's counsel questioned Mr. Kirby about that appointment:

Q. What does that highlighted section say?
A. He has requested administrative closure, as he plans to seek alternative employment.
Q. Is this from your visit with Dr. Brophy?
A. Yes, sir.
Q. Were you still in pain on that visit?
A. Yes, sir.
Q. Were you still experiencing the same symptoms when you saw Dr. Brophy—
A. Yes, sir.
Q. —that you described to us?
A. Yes, sir.
Q. Why did you ask for administrative closure?
A. Because Dr. Brophy just kept telling me I need surgery, that's the only way I could be fixed, is if I do surgery. I told him I wasn't ready to do surgery, so he said he had to release me to go back to work full-duty.

Dr. Schrader gave his medical opinion concerning the reasonableness of Mr. Kirby's decision not to pursue surgery at the time of Dr. Brophy's recommendation:

Q. And with regard to Mr. Kirby's reluctance to pursue a surgical option, do you believe that that is a reasonable choice by Mr. Kirby?
A. Yes. Patients are often offered surgery, and then we always talk about risks and benefits and alternatives. Unless you are talking about a life-threatening thing, there is also a process of the patient evaluating whether the surgery, how likely is it to be successful, again their general information

- 7 -

they have gathered from friends and family over their lifetimes as to whether people do well with this type of surgery or don't do well. He has actually been through the surgery before and actually had a good result. And in talking with him and it was documented in the records as well, he wasn't necessarily, didn't feel pressed to do surgery, knowing what it would be to recover from it, and also having a new job where if he took time off from his job he might lose his job. And he has been able to do the job and continue with it ever since.

Dr. Schrader subsequently testified that "a reasonable person can decide to not have surgery based on what they perceive the risks are." Similarly, Mr. Kirby opted not to have steroid injections as he had previously experienced no relief from such injections.

As stated above, the doctrine of mitigation of damages requires only "reasonable" efforts to minimize loss. *Kline*, 2001 WL 25750, at *7. Mr. Kirby completed four weeks of physical therapy, attempted to return to his previous job but had increased pain, obtained an MRI, and then saw Dr. Brophy, who recommended surgery or steroid injections. Because of his prior experience with surgery and steroid injections and because of his need to support his family while his wife was obtaining her nursing degree, Mr. Kirby elected not to pursue surgery at that time. The trial court heard Mr. Kirby's testimony and was in the best position to assess his credibility. *Starkey*, 244 S.W.3d at 353. We find no error in the trial court's assessment of damages.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Memphis Light, Gas and Water, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

- 8 -