# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 1, 2016

## JANE ELLIOT WATT v. WILLIAM JAMES WATT

**Appeal from the Circuit Court for Davidson County**
**No. 11D-859    Amanda McClendon Judge**

_____

**No. M2014-02565-COA-R3-CV – Filed April 27, 2016**

_____

In this divorce action, Husband contends the trial court erred by granting Wife a divorce on the grounds of Husband's inappropriate marital conduct despite the fact he was found guilty of, *inter alia*, three counts of rape of a child while the divorce was pending. Husband also takes issue with the classification of property, the division of marital property, and the award of alimony to Wife. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and BRANDON O. GIBSON, JJ., joined.

Thomas J. Drake, Jr., Nashville, Tennessee, for the appellant, William James Watt.

Sharon L. Reddick, Nashville, Tennessee, for the appellee, Jane Elliot Watt.

## OPINION

Jane Elliot Watt ("Wife") and William James Watt ("Husband") have been married to each other twice. They married for the second time on October 26, 1996. Wife filed for divorce on the grounds of inappropriate marital conduct on March 9, 2011, after learning that Husband was accused of raping a four-year-old child. Husband filed an answer and counter-complaint. Wife filed an answer to the counter-complaint, and other pleadings were subsequently filed.

While this divorce action was pending, Husband was convicted of three counts of rape of a child and three counts of aggravated sexual battery of a child under the age of 13 years, all of which are felonies. He was sentenced to 35 years in prison to be served at

100%. Because Husband was 74 years old at the time of trial, this prison sentence all but ensures that he will remain in prison for the rest of his life.[1]

The divorce trial occurred on January 24, 2014. Wife appeared in person and testified. Husband also testified at trial, but he did not appear in person. Instead, he testified via video conference from jail. The attorneys for both parties were present and participated at trial. Several other witnesses testified, and most of their testimony pertained to personal property that was at issue.

Wife testified that she was 69 years old and in poor health, that she worked part-time as a pianist for her church making $370 a month, and that her only other source of income was from social security in the net amount of $1,071. Wife owned two small accounts at U.S. Bank and some miscellaneous personal property. The parties jointly owned a Sebring convertible and the marital residence. It was undisputed that the net value of the marital residence was $26,815.[2]

Husband testified that he worked as a civilian contractor for the military until his retirement. He stated that he received a monthly annuity in the gross amount of $2,132.00 from the Federal Employees Retirement System. In addition to the marital residence, Husband had a bank account as well as some furniture and tools. Although Husband's friend, William Flum, testified that he was storing personal property that belonged to Husband, Husband asserted that Wife sold or gave away much of his personal property without his permission after he left the marital residence. He also asserted that she kept some of his property, erroneously claiming it was her own property.

The trial court announced its ruling from the bench on June 27, 2014, and the Final Decree of Divorce was entered on August 18, 2014. The court granted Wife a divorce based on Husband's inappropriate marital conduct and dismissed Husband's counter-complaint for divorce. The trial court's findings of fact that pertain to the ground for the divorce are as follows:

1. The Wife filed for divorce March 9, 2011, alleging inappropriate marital conduct. The parties had previously been married to one another and had remarried one another on October 26, 1996. The date of separation was

---

[1] At the time of trial, the Court of Criminal Appeals had issued an opinion affirming Husband's convictions, and Husband was in the process of appealing to the Tennessee Supreme Court. Before the trial court issued its final order of divorce in June 2014, the Supreme Court denied Husband's application for permission to appeal. *See State v. Watt*, No. M2012-01487-CCA-R3-CD, 2014 WL 97291, (Tenn. Crim. App. Jan. 10, 2014), *perm. app. denied* (Tenn. May 15, 2014).

[2] This value is undisputed because the net proceeds from the court-ordered sale of the marital residence was $26,815.

September 30, 2010. On May 20th, 2011, husband answered the complaint and filed a counter-complaint alleging inappropriate marital conduct against that wife.

2. The Husband was arrested and convicted by a jury and sentenced as follows during the marriage:

> Guilty of 3 counts of *Rape of a child, Class A felony*
> (Mandatory 25 year sentence for each count);
> Guilty of 3 counts of *Aggravated sexual battery, Class B felony, a child under the age of 13 years.*
> (10 years for each of the 3 counts)
>
> This child was [under the age of thirteen]. Judge Dozier ruled that Counts 1 and 4 would be served consecutively thus ensuring that the husband would be in jail for 35 years and that is a sentence to be served at 100%.

3. Based upon those facts, the Court does find that the husband is guilty of inappropriate marital conduct and the wife is awarded the divorce upon those grounds.

The parties' property, which included the marital residence, one car, miscellaneous personal property, Husband's retirement annuity, and bank accounts, was awarded as follows. Wife was awarded the funds in the bank accounts at U.S. Bank, which accounts were in her name. The Sebring convertible, which was titled in both names, was awarded to Wife. Wife was awarded all items of furniture in her possession, and Husband was awarded all items Mr. Flum was storing for his benefit. The trial court also awarded Husband's bank account at First Tennessee Bank to Husband, which was used to pay Husband's attorney's fees. As for Husband's allegations that Wife sold or gave away much of his personal property, the trial court specifically found that Wife had not taken any of Husband's "tools or anything other than what she is entitled to."

With regard to the marital residence, the court awarded all of the net proceeds from the sale of the residence, the sum of $26,815, to Wife because "Wife paid all of the mortgage payments and all the repairs from the date of separation forward with the exception of about $3,000 that the husband paid." The record reflects that the amount paid by Wife during this period was approximately $24,000, which the court found exceeded Wife's ability to pay because her monthly income, including social security benefits and income from her church, was only about $1,400 per month, and she had no liquid assets.

- 3 -

Wife was awarded a small percentage of Husband's annuity. She was also awarded $1,000 per month as alimony *in futuro*. The relevant portion of the trial court's order reads as follows:

> 12. The Husband was a civilian contractor for the military and receives an annuity from the Federal Employees Retirement System. . . . At present, the Husband's gross monthly annuity is $2,132.00 so the Wife is awarded $405.08 monthly which shall be separately routed and paid to her monthly.

> 13. The Wife is retired and on limited income. The Husband is incarcerated probably for the remainder of his life and he is not going to need his annuity income. The Wife has suffered due to the Husband's criminal actions and conduct in the marriage and therefore the Wife is awarded $1,000.00 alimony *in futuro* to be paid monthly by Husband from his annuity until Wife's death or remarriage or Husband's death, whichever occurs first. . . .

After the final order was entered, Husband filed a motion to amend the amount of the annuity that was awarded to Wife, contending the court erroneously computed the time period during which Husband was working and earning retirement benefits while married to Wife.[3] The trial court acknowledged that a mathematical error had been made and amended the Final Decree of Divorce to provide that Wife is "awarded $270.76 from the [Husband's] monthly retirement annuity rather than $405.08 as ordered in the Final Decree of Divorce."

Husband appeals contending the trial court erroneously granted Wife a divorce based on felony convictions that were rendered after the complaint for divorce was filed. He also contends the court erred in the division of marital property and by awarding Wife $1,000 per month in alimony *in futuro*.

**ANALYSIS**

**I. GRANTING THE DIVORCE TO WIFE**

Husband contends the trial court erroneously granted the Wife a divorce "based on a felony conviction that was rendered after the Wife filed for divorce." He also contends he provided sufficient testimony concerning Wife's inappropriate marital conduct for the court to award the divorce to him.

---

[3] According to Husband, he was married to Wife for 25.4% of the time that he was working and earning retirement benefits. Consequently, Wife is entitled to half of 25.4% of Husband's annuity. Half of 24.5% is 12.7%, and 12.7% of Husband's $2,132.00 monthly annuity equals $270.76. Neither party has challenged this calculation on appeal.

Before addressing the substance of Husband's argument, we must address his failure to comply with the rules governing appeals to this court. Tennessee Rule of Appellate Procedure 27(a) states that the brief of the appellant shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented . . . including the reasons why the contentions require appellate relief, *with citations to the authorities and appropriate references to the record* (which may be quoted verbatim) relied on . . ." (emphasis added). In addition, the Rules of the Court of Appeals require the appellant to set forth in his brief "[a] statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found." Tenn. Ct. App. R. 6(a)(4).

The entirety of Husband's argument that the trial court erred in granting the divorce to Wife based on Husband's inappropriate marital conduct and should have granted the divorce to him reads as follows:

> The Trial Court erroneously granted the Wife a divorce based on a felony conviction that was rendered after the Wife filed for divorce, therefore, the felony conviction, occurring after the filing of the initial Complaint for divorce, could not be grounds. The Court should have granted a divorce to the Husband on the grounds of inappropriate marital conduct.

> The Husband testified to his grounds for divorce, telling the Court about inappropriate marital conduct. (TP pg. 149 lls 7-24; pg. 163 lls 1-25, page 164, lls 1-24).[4]

> The only grounds of the wife [sic] was a post-filing conviction of felony.

As the above clearly reveals, Husband has failed to cite to a single authority that supports his argument; thus, he failed to comply with Tenn. R. App. P. 27(a)(7). Further, instead of including a statement of the facts concerning inappropriate marital conduct about which he testified, Husband has simply referred this court to a citation to the record. Therefore, he has not provided "a statement of [this] determinative fact relied upon" and has failed to comply with Tenn. Ct. App. R. 6(a)(4).[5]

---

[4] The parenthetical appears in Husband's argument exactly as quoted here.

[5] Tenn. R. App. P. 27(a)(6) requires the appellant's brief to contain "[a] statement of the facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record . . . ." Here, the testimony that Husband cites to support his argument about Wife's inappropriate marital conduct is not even cited – let alone "set forth" – in his "Statement of Facts" section. Instead, he has

(continued…)

Based on his failure to comply with these rules, Husband has essentially waived this issue on appeal.[6] However, even if Husband had preserved this issue, we find no merit in the substance of his arguments.

In this state, courts may declare parties divorced without awarding a divorce to either party or making a finding that one party was more at fault. *See* Tenn. Code Ann. § 36-4-129(b); *Varley v. Varley*, 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996). However, courts are also empowered to grant a divorce to the party who was "less at fault" if any ground for divorce in Tenn. Code Ann. § 36-4-101 is proven. *See* Tenn. Code Ann. § 36-4-129(b).

Conviction of a felony is a ground for divorce, *see* Tenn. Code Ann. § 36-4-101(a)(6), but courts may also grant a divorce based on a spouse's inappropriate marital conduct. Tenn. Code Ann. § 36-4-101(a)(11). Establishing inappropriate marital conduct does not require that one spouse be convicted of a crime. As we have explained, inappropriate marital conduct can be found when "[t]he husband or the wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper. . . ." *Chaffin v. Ellis*, 211 S.W.3d 264, 289 (Tenn. Ct. App. 2006) (quoting Tenn. Code Ann. § 36-4-101(11) (2001)); *see Eldridge v. Eldridge*, 137 S.W.3d 1, 23-24 (Tenn. Ct. App. 2002). Such conduct exists when either spouse has engaged in "a course of conduct which (1) caused pain, anguish or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.'" *Chaffin*, 211 S.W.3d at 289 (quoting *Eldridge*, 137 S.W.3d at 24); *Earls v. Earls*, 42 S.W.3d 877, 892 (Tenn. Ct. App. 2000) (Cottrell, J., concurring). As these authorities establish, under Tenn. Code Ann. § 36-4-101(a)(11), the issue is whether a spouse engaged in inappropriate marital conduct during the marriage, not whether a spouse was convicted of a crime for engaging in that conduct.

Although Husband contends that the trial court could not have granted Wife a divorce based on a felony conviction that occurred after she filed her initial complaint, it is clear that the trial court granted Wife a divorce based on his inappropriate marital conduct. Wife's March 2011 petition for divorce alleges that Husband was guilty of inappropriate marital conduct and cites Tenn. Code Ann. § 36-4-101(a)(11). Additionally,

---

merely referred the court to pages in the transcript we should read. This means of "setting forth [a] fact[] relevant to the issues presented" fails to satisfy the requirements of Tenn. R. App. P. 27(a)(6).

[6] "Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000); *see also Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure to cite to any legal authority or to fashion an argument constitutes waiver of an issue); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003) ("Failure to cite authority for propositions in arguments submitted on appeal constitutes waiver of the issue.").

both the transcript of the trial court's ruling and the final order of divorce state that Wife was awarded a divorce on the grounds of Husband's inappropriate marital conduct. As previously discussed, establishing the ground of inappropriate marital conduct does not require proof that a spouse was convicted of a crime. *See* Tenn. Code Ann. § 36-4-101(a)(11); *Chaffin*, 211 S.W.3d at 289; *Eldridge*, 137 S.W.3d at 23-24. Therefore, we find no merit to Husband's argument that the trial court erred in granting the divorce to Wife.

We now turn our attention to Husband's argument that he provided sufficient evidence concerning Wife's inappropriate marital conduct for the court to award the divorce to him. Husband dedicated a mere two sentences in his brief to support his argument that the evidence preponderates in favor of granting the divorce to Husband instead of Wife, and not one "fact" is set forth in his argument. These two sentences read as follows: "The Husband testified to his grounds for divorce, telling the Court about inappropriate marital conduct. (TP pg. 149 lls 7-24; pg. 163 lls 1-25, page 164, lls 1-24). The only grounds of the wife [sic] was a post-filing conviction of felony."

Husband has failed to provide "[a] statement of each determinative fact relied upon" in support of this argument as Tenn. Ct. App. R. 6(a)(4) requires, but we have read the portion of the transcript Husband asked us to read and find Husband's contention so disingenuous that it belongs in a spectrum beyond absurd and frivolous. At trial, Husband testified that he was entitled to a divorce because of Wife's "incompatibility, dishonesty, financial irresponsibility, non-affection towards [Husband]," and "inappropriate martial behavior." Husband also testified that he wanted a divorce prior to 2010 because Wife refused to come to bed while he was awake, would not talk to him, did not help him in preparing the parties' tax returns, and flew to Colorado to attend her nephew's wedding while Husband was in the hospital recovering from an operation that treated an infection in his knee.

On cross-examination, Husband explained why he had not previously filed for divorce based on Wife's conduct.

> Q. Okay. . . . Did you file for divorce at all until you filed your counter-complaint in 2011?
>
> A. No, ma'am, I didn't. Do I have the right to say why?
>
> THE COURT: Sure.
>
> BY [Wife's attorney]:
> Q. Sure.

A. Okay. When I entered into a marriage contract and took an oath on the Bible in the church, I intended on keeping it. And it says for good or worse. And that's the reason I didn't.

Q. Okay. But now you have, you have filed for divorce, correct?

A. I have no choice now.


Here, the trial court did not find Husband's unsupported testimony sufficient to establish that he was "less at fault" than Wife, and the evidence relevant to the issue of fault most certainly preponderates in favor of the trial court's finding. *See* Tenn. Code Ann. § 36-4-129(b). Indeed, Husband's testimony that he did not file for divorce because he "took an oath on the Bible in the church" stands in stark contrast to his convictions for rape and sexual assault and is so outrageous and incredible as to render all of his testimony untrustworthy.

The trial court is vested with the discretion to grant a divorce to the party who was less at fault, *see id.*, and the evidence in this record fully supports the trial court decision to grant the divorce to Wife. Accordingly, we affirm the trial court's decision to award the divorce to Wife based on Husband's inappropriate marital conduct.

## II. DIVISION OF PROPERTY

Husband contends that the trial court failed to classify the parties' property as either marital or separate. In addition, he argues that he should have been awarded a pump organ, a cherry cabinet, various work tools, and a "Shop Smith wood working system" because they are his separate property. He also contends that that he should have received half of the proceeds from the sale of the marital residence.

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Tennessee is a "dual property" state; thus, property cannot be included in the marital estate unless it is deemed "marital property." *See Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010); *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002). The definition of "marital property" is found in Tennessee Code Annotated § 36-4-121(b)(1). "Separate property," as that term is defined in Tennessee Code Annotated § 36-4-121(b)(2)(A)-(F), is property that is not "marital property." Therefore, separate property should not be included in the marital estate. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Property classification is a question of fact. *Bilyeau v. Bilyeau*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). Thus, we review the trial court's classification using the familiar standard of review in Tennessee Rule of Appellate Procedure 13(d).

Two rebuttable presumptions provide a helpful starting point for classification of property as separate or marital. The first presumption, which derives from Tenn. Code Ann. § 36-4-121(b)(1)(A), is that assets acquired by either spouse during the marriage are presumed to be marital property. *Church v. Church*, No. M2004-02702-COA-R3-CV, 2006 WL 2168271, at *7 (Tenn. Ct. App. Aug.1, 2006); *see Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *4 (Tenn. Ct. App. Sept. 1, 2006). This presumption may be rebutted by presenting evidence the property falls into one of the categories listed in Tenn. Code Ann. § 36-4-121(b)(2)(B)-(F). *See Fox*, 2006 WL 2535407, at *4. The second presumption, which is derived from Tenn. Code Ann. § 36-4-121(b)(2)(A), is that assets acquired by either spouse prior to the marriage are presumed to be separate property. *Id.*

Husband contends that the trial court erred by failing to classify the parties' property as marital or separate. We disagree with this contention, at least in part. The record reveals that the trial court allowed Husband to retain 87.3% of his annuity as separate property based on the proportionate period of time Husband owned and made contributions to the annuity during the parties' second marriage. Furthermore, the parties themselves divided much of the household furnishings and tools, and it is undisputed that Mr. Flum received a significant amount of personal property on Husband's behalf. Thus, the parties effectively stipulated to the division of this property, and the trial court did not err by accepting the division of personal property that the parties themselves agreed to make.

The trial court also made a finding that, with respect to furniture and tools, Wife had not "taken any of [Husband's] tools or anything other than what she is entitled to." The remainder of the trial court's findings do not provide us with a clear understanding of the basis for this decision, and we agree with Husband that the failure to include such findings does not satisfy the Tenn. R. Civ. P. 52.01 mandate. *See Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013). However, after reviewing the record, we have determined that the evidence supports the trial court's division of property in this case, at least with respect to the items of property that Husband has properly raised on appeal.

As with other issues in this case, our review of the trial court's division of property is hindered by deficiencies in Husband's brief. When a party to a domestic relations case takes issue with the trial court's classification or division of marital property, that party's brief must contain a table listing "all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts." Tenn. Ct. App. R. 7. Each entry in the table must include a citation to the record. *Id.* Although Husband's brief includes a Rule 7 statement, it is woefully inadequate. The statement contains only one line of information, which pertains only to the marital residence and does not include a citation to the record. Some of the information about other personal property is contained in the argument section of

Husband's brief, but this information is not complete or contained in a table substantially similar to the one provided in Rule 7. Consequently, we will confine our analysis to the property about which Husband has provided some information.

Husband contends that the pump organ, the cherry cabinet, various work tools, and the Shopsmith woodworking system were his separate property. After reviewing the record, we have determined that the evidence does not support this assertion. Concerning the pump organ, both parties testified that it was their separate property prior to the marriage. The trial court credited Wife's testimony over Husbands in this regard, and we find no error in that determination.

Additionally, the cherry cabinet was marital property. Husband testified that the cabinet was purchased during the marriage and that it was given to him "as payment for lawn service [Husband] had done for [a] man." Wife testified that she had possession of the cherry cabinet and that she "paid $150 cash and then [Husband] worked for the rest of it." The undisputed testimony is that the cabinet was acquired during the marriage, and accordingly it is presumed to be marital property subject to division.

Although Husband contends that Wife improperly disposed of work tools or failed to return them to him, Wife testified at trial that many of these tools were purchased during the marriage. Thus, they are presumed to be marital property. *See Fox*, 2006 WL 2535407, at *4; *Church*, 2006 WL 2168271, at *7. Wife testified that she sold some of these tools with Husband's consent to help pay household expenses, and Mr. Flum testified that he had taken possession of a number of Husband's tools at Husband's request. Although Husband testified that some of these tools were acquired before the marriage, he failed to adequately identify which tools he was referring to, and his brief does not provide a citation to the record or a proposed value for the tools he claims were not provided to him or Mr. Flum. Consequently, the record indicates that the tools at issue were marital property and that they were largely awarded to Husband.

Wife testified that she sold the Shopsmith woodworking system. Although the record contains evidence about the Shopsmith's value, Husband has not directed our attention to any evidence in the record to support his contention that he owned it, and our review of the record has revealed none. Consequently, the evidence does not preponderate against the trial court's finding that Wife did not take "any of [Husband's] tools or anything other than what she is entitled to."

Husband also contends that he should have received half of the proceeds from the sale of the marital residence. The trial court awarded all of the proceeds of the sale to Wife because "Wife paid all of the mortgage payments and all the repairs from the date of separation forward with the exception of about $3,000 that [Husband] paid." The record supports the trial court's finding that this asset would have been lost but for Wife's

exceptional efforts to keep it out of foreclosure while Husband remained in jail. Based on this fact, the trial court awarded the proceeds to Wife. This decision was not error.

### III. ALIMONY

Husband contends that the trial court erred by awarding Wife $1,000 per month in alimony *in futuro*.

Alimony *in futuro*, which is a form of long-term support, is appropriate when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible. *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011); Tenn. Code Ann. § 36-5-121(f)(1). An award of alimony *in futuro* is subject to modification and remains in the court's control for its entire duration. *See* Tenn. Code Ann. § 36-5-121(f)(2)(A). Alimony *in futuro* ceases automatically upon the recipient's death or remarriage. Tenn. Code Ann. § 36-5-121(f)(3).

The parties' standard of living during the marriage is a factor that courts consider when making alimony determinations. *See* Tenn. Code Ann. § 35-6-121(i)(9). However, "the economic reality is that the parties' post-divorce assets and incomes often will not permit each spouse to maintain the same standard of living after the divorce that the couple enjoyed during the marriage." *Mayfield v. Mayfield*, 395 S.W.3d 108, 115-16 (Tenn. 2012) (citing *Gonsewski*, 350 S.W.3d at 113). Accordingly, "[d]ecisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay." *Id*. at 116.

As noted earlier, both spouses have very modest incomes. Husband's gross monthly income is $2,132.00 per month while Wife's income is $1,470.00 per month. Thus, Husband has a very slight economic advantage in the context of income. However, Wife, who was 69 years of age and in poor health at the time of trial, has a much greater need for support than Husband. Although Husband's incarceration could involve certain expenses, it also limits his need for money to pay for transportation and other miscellaneous expenses.[7] In contrast, Wife must still pay for such expenses. Further,

---

[7] At trial, Husband introduced a bill from the Davidson County Criminal Court Clerk, apparently for court costs, totaling over $12,000. Additionally, Husband may be required to reimburse the prison that houses him for some of the expenses associated with his incarceration. Because he was convicted of several felonies and received a 35-year sentence, Husband is now in the custody of the Tennessee Department of Correction rather than a county jail or workhouse. *See* Tenn. Code Ann. § 40-35-314. State prisons are authorized to recover the expenses incurred from housing prisoners from the prisoners themselves. *See* Tenn. Code Ann. §§ 41-21-901 to 911 (codifying the "Inmate Financial Responsibility Act of 1998"). Under these statutes, the state of Tennessee could seek reimbursement from Husband in an amount "not in excess of the per diem cost of care for maintaining inmates in the state correctional facility in which the inmate is housed." *See* Tenn. Code Ann. § 41-21-907(d). The possibility that Husband might

(continued…)

courts are authorized to consider the relative fault of the parties when determining whether alimony is appropriate, and there can be no dispute that Husband's fault is much greater than Wife's. *See* Tenn. Code Ann. § 36-5-121(i)(11).

Considering these factors, we affirm the award of alimony *in futuro* to Wife in the amount of $1,000 per month.

## IN CONCLUSION

We affirm the judgment of the trial court in all respects. Costs of appeal are assessed against William James Watt.

_____
FRANK G. CLEMENT, JR., JUDGE

---

be financially responsible for some of the costs associated with his incarceration at some point in the future does not require reversal of the trial court's alimony award for two reasons. First, the reimbursement issue was not raised at trial or on appeal, and no evidence or argument has been presented about it. Second, if the state determines that it may seek reimbursement from Husband, he will have the opportunity to present evidence of his alimony obligation, which a court will be required to consider when determining whether subject his assets to the state's claim for reimbursement. *See* Tenn. Code Ann. § 41-21-907(e) ("At the hearing . . . the court shall take into consideration any legal obligation of the defendant to support a spouse . . . .").