IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 21, 2016 Session

## ROBERT HAROLD DOUGLAS v. SUSAN MERCEDES DOUGLAS

**Appeal from the Chancery Court for Benton County**
**No. 2847      Carma Dennis McGee, Chancellor**
_____

**No. W2015-02044-COA-R3-CV – Filed August 8, 2016**
_____

In this divorce proceeding, Husband appeals from the trial court's classification of an account as Wife's separate property. On appeal, Husband asserts that the account is marital property based on the doctrine of transmutation. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER, and KENNY ARMSTRONG, JJ., joined.

Andrea D. Sipes and Lowe Finney, Jackson, Tennessee, for the appellant, Robert Harold Douglas.

George Robert Whitfield III, Paris, Tennessee, for the appellee, Susan Mercedes Douglas.

### OPINION

#### BACKGROUND

Robert Harold Douglas ("Husband") filed a complaint for divorce against Susan Mercedes Douglas ("Wife") on July 9, 2013. The parties married in 1995 and separated sometime during the summer of 2013. The parties had one child, who reached majority while the divorce was pending. Although this divorce involved multiple issues, the sole issue on appeal concerns the classification of a Wells Fargo account ("the Account") that contained funds that Wife inherited from her late father. At the time of trial, the Account had an approximate value of $2.4 million. The parties do not dispute that the Account was funded solely by monies inherited by Wife after her father's death in 2010.

The trial court conducted a trial on July 9 and 10, 2015. Due to the limited scope of this appeal, we only recite the parties' testimony that is related to the Account. Except where otherwise indicated, the facts concerning the Account are relatively undisputed. Wife testified that the Account contained only funds that she inherited from her late father's estate. Her financial advisor, Mr. Doug Golden, testified that he met with Wife at the time she opened the Account in September 2010. Husband was not involved in the creation of the Account. After weighing her options for setting up the Account, Wife decided to establish the Account as a joint account with a right of survivorship in both her and Husband's names. Wife testified that she decided to create the joint account with right of survivorship so that, in the case of her death, the Account would avoid being subject to probate. In addition, she stated that the inheritance tax consequences were less with a joint account with a right of survivorship. Wife testified that, when she set up the Account, she was "still in the middle" of the four-year-long probate process for her father's estate, and she did not "want anything like that to happen."

Approximately four to six months after establishing the Account, Wife began withdrawing $5,000.00 per month from the Account and has continued to do so. She testified that she used the money to "support family, buy big ticket items like the Mercedes, the red 350 truck, the living quarters horse trailer, build the barn, buy some more adjacent property. . . . It was thirty-something acres." She testified that Husband never deposited or withdrew any funds from the Account. Additionally, Husband did not participate in the management of the Account. Wife stated that she met with Mr. Golden often, sometimes as often as weekly.

The parties held the Account jointly until sometime during the summer of 2012. At this time, Wife contacted Wells Fargo to remove Husband from the Account. Wife testified that she did this again for tax purposes. However, she also conceded that shortly prior to taking this action, she and husband had been experiencing marital difficulties. Wife testified that the reason she wanted to change the names on the Account was to avoid certain taxes and make it easier for her daughter to have access to the funds in case Wife died. When Wife asked Husband for his opinion on the transfer, she stated that he did not care and told her to do "whatever [she] wanted." Wife obtained the transfer letter from Wells Fargo to begin the process for removing Husband from the Account. She testified that she signed the document upon receiving it, and "then I put it in his bowl where his keys are."

Several weeks passed, according to Wife, and Husband had not signed the letter. She stated that she asked Husband again to sign the document. She testified that she found it on the counter several days later signed, but Wife recognized that the parties' daughter had signed Husband's name. Wife stated that the parties' daughter often signed documents on behalf of Husband. The parties' daughter, however, testified that Wife asked her to sign Husband's name. Husband also testified that he did not give the daughter permission to sign his name. Husband testified that he had no knowledge that he had been removed from the Account until the parties separated in 2013.

The trial court entered an order declaring the parties divorced on July 27, 2015. At this time, all other issues were reserved pending further rulings from the trial court. On August 15, 2015, the trial court issued a written ruling finding that the Account was Wife's separate property. The trial court found that Wife did not intend to gift the funds to the marital estate and that no evidence existed linking Husband's contributions and any appreciation in value of the Account. Husband timely appealed.

## ISSUE[1]

Husband presents one issue for review: whether the trial court erred by classifying the Account as separate property that had not been transmuted?

## STANDARD OF REVIEW

The trial court's findings regarding questions of fact are presumed correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The classification of particular property as marital or separate is a question of fact to be determined in light of all the relevant circumstances. *See **Snodgass v. Snodgrass***, 295 S.W.3d 240, 245 (Tenn. 2009). However, questions of law are reviewed *de novo* with no presumption of correctness. ***Union Carbide Corp v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

## DISCUSSION

Husband challenges the trial court's determination that the Account never transmuted into marital property and remained Wife's separate property. Husband asserts that Wife intended for the money to be a gift to "help her family." Additionally, Husband claims that the transfer of the money into an Account only in Wife's name was procured through fraud, and thus, was ineffective to render it separate property again.

---

[1] As an initial matter, we note that both parties failed to present this Court with a record that had been culled down to only relevant materials pursuant to their obligations in Tennessee Rule of Appellate Procedure 24. The technical record appears to contain a litany of documents unrelated to the Account at issue, such as restraining orders, motions for *pendente lite* support, various other motions, parenting class certificates, and documents regarding the parenting plan. The parties also included sixty exhibits totaling well over 1,000 pages in the record on appeal, approximately fifteen pages of which have any relevance to this appeal.

This practice does not promote the speedy resolution of cases and may be a ground for dismissal of the appeal. In the interest of judicial economy, this Court exercises its discretion to consider the merits of this appeal despite the foregoing deficiencies. Tenn. R. App. P. 2. However, we caution litigants to consider the implications of their decisions when creating the record on appeal, as we may not be so forgiving in the future.

The trial court, however, stated that it could not find that transmutation of the Account had occurred. The trial court specifically found that Wife's intent by titling the Account in both parties' names was for estate planning purposes and to avoid certain estate taxes. The trial court also found that Husband had no involvement with the management of the Account and neither deposited nor withdrew any funds. In addition, the trial court found that Wife used the money occasionally to help the family, but did not intend to make a gift of the funds in the account. The trial court concluded:

> The funds were separate property inherited by Wife during the marriage. She had no intent to gift the funds to the marital estate. For a time period, the funds were held in an account which was jointly in the name of Husband and Wife as joint [tenants] with right of survivorship. There is no evidence of a link between the Husband's contributions and the appreciation in the value of the separate property. Therefore, this remains Wife's separate property.

Tennessee law distinguishes between separate property and marital property in divorce proceedings. *Smith v. Smith*, 93 S.W.3d 871, 875–76 (Tenn. Ct. App. 2002). The trial court is charged only with providing an equitable division of the parties' marital property. Tenn. Code Ann. § 36-1-121(a)(1)–(2). Accordingly, the trial court must first classify the parties' property as marital or separate. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Typically, property that is acquired during the marriage is deemed marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A). On the other hand, "separate property" encompasses, *inter alia*, "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent[.]" Tenn. Code Ann. § 36-4-121(b)(2)(D).

Separate property can become marital property subject to division, however, through the doctrine of transmutation. When the parties treat separate property in a way that manifests an intent that the property become marital property, transmutation occurs. *Woodward v. Woodward*, 240 S.W.3d 825, 829 (Tenn. 2007). As explained by the Tennessee Supreme Court:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property . . . . The rational underlying th[is] doctrine[] is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances

- 4 -

or communications clearly indicating an intent that the property remain separate.

***Langschmidt v. Langschmidt***, 81 S.W.3d 741 (Tenn. 2002) (citing Homer H. Clark, *The Law of Domestic Relations in the United States,* § 16.2 at 185 (2d ed. 1987)). The party claiming that the separate property has been transmuted into marital property carries the burden of demonstrating that transmutation has occurred. ***Nesbitt v. Nesbitt***, No. M2006-02645-COA-R3-CV, 2009 WL 112538 (Tenn. Ct. App. Jan. 14, 2009) (citing ***Keyt v. Keyt***, 244 S.W.3d 321, 328 n.7 (Tenn. 2007)). Thus, the party must prove that transmutation has occurred to cause the property to fit within the definition of marital property. *Id.* (citing ***Kinard v. Kinard***, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998)). Determining whether separate property has been transmuted is a fact-intensive analysis dependent on the particular circumstances of a case. ***Telfer v. Telfer***, No. M2012-00691-COA-R3-CV, 2013 WL 3379370, at \*7 (Tenn. Ct. App. June 28, 2013), *perm. app. denied* (Tenn. Oct. 16, 2013) (citing ***Snodgrass***, 295 S.W.3d 240, 245 (Tenn. 2009)).

Transmutation can be proven, *inter alia*, by evidence that property has been titled in the names of both spouses. ***Smith v. Smith***, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002). Such property may begin as separate property but be subsequently placed in the names of both spouses. *Id.* "The rationale underlying [this doctrine] is that dealing with property in [this] way[] creates a rebuttable presumption of a gift to the marital estate." *Id.* The presumption, however, may be rebutted based upon evidence clearly indicating an intent that the property remain the spouse's separate property. *Id.*

In ***Smith v. Smith***, 93 S.W.3d 871 (Tenn. Ct. App. 2002), this Court analyzed a similar factual situation. In that case, the wife argued that the trial court erred in classifying an investment account as the husband's separate property. *Id.* at 879. She claimed that the account became marital property through the doctrine of transmutation. The husband had obtained the account from his mother and, during the parties' marriage, titled the account in both parties' names. Husband testified that he added his wife's name to the account "in order for her to have immediate access to cash the event of his death." Husband's accountant corroborated this testimony, stating that Husband only added the wife's name as part of his estate planning. Neither party deposited funds into the account, and although the wife had check-writing privileges, she neither wrote a check from the account nor withdrew any funds.

This Court held that the evidence did not preponderate against the trial court's conclusion that the account was the husband's separate property. *Id.* at 879. We recognized that a presumption was created that the husband gifted the account to the marital estate when he titled it jointly, but ultimately concluded that the husband had rebutted the presumption by explaining that he only added wife's name for estate planning purposes. Additionally, we noted that other circumstances supported this conclusion, such as the fact that the wife never

deposited nor withdrew funds from the account. The trial court's finding that the account was the husband's separate property was therefore affirmed. *Id.* at 880.

The case-at-bar is analogous to the *Smith* case. As in *Smith*, Wife had the Account at issue titled jointly in both parties' names during the marriage. The joint titling of the Account raises a presumption that Wife intended for the property to be a gift to the marital estate. *Id.*; *see also* *Wright Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998) (providing that a presumption of transmutation arises when a party uses separate funds to purchase property but jointly titles the property). In the instant case, however, like in *Smith*, Wife testified that her intent was not to gift the Account to the marital estate. Instead, she testified that her intent in jointly titling the Account was for estate planning purposes, such as avoiding certain tax consequences. Wife specifically stated that she wanted the Account to avoid the probate process, and she believed that titling the Account jointly with a right of survivorship would accomplish this goal. Like the accountant in *Smith*, Mr. Golden similarly corroborated Wife's testimony that she was concerned with different estate planning scenarios for the Account. In addition, the parties do not dispute that Husband's had no involvement with the Account other than being listed on it. Husband never participated in any management of the funds and did not utilize the funds for any reason. Equally important, Wife's occasional use of funds from the Account for her family is insufficient to demonstrate that she intended for the Account to be a gift to the marital estate. *Snodgrass*, 295 S.W.3d at 257 (citing *Avery v. Avery*, No. M2000-00889-COA-R3-CV, 2001 WL 775604, at *9 n.12 (Tenn. Ct. App. July 11, 2001) ("We think it would be bad policy for a court to hold that a party risks all of his or her separate property by spending some of it for the benefit of his or her family."). Accordingly, we conclude that Wife has rebutted the presumption that she intended for the funds in the Account to become marital property.

Husband also contends that Wife's removal of Husband from the Account "does not render the money once again separate property because it was effectuated by fraudulent means without the knowledge of Husband." Husband argues that he was fraudulently removed from the Account because his daughter signed the letter and not him. He also alleges that it was fraudulent because Wife had the parties' daughter sign in an effort to avoid Husband's interest in the property once the parties separated. The trial court concluded that the Account was never transmuted into marital property and, therefore, at all times pertinent the Account was Wife's separate property. Wife's intent in jointly titling the Account, as found by the trial court, was not to gift the Account to the marital estate, but instead to avoid certain estate planning pitfalls. Any subsequent removal of Husband's name from the Account will not render the Account marital property, as it was never marital property in the first instance. Thus, Wife's actions merely converted the form of property that was already separate into a different form of separate property. *Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996) (concluding that "property acquired in exchange for separate property . . . remains separate property") (citing *see also* Tenn. Code Ann. § 36-4-121(b)(2)(B), (C)).

The result in this case would be the same even if Husband's name was still listed on the Account. Respectfully, Husband's argument to this point is unavailing.

Based on the foregoing, we affirm the trial court's ruling finding that the Account was Wife's separate property.

CONCLUSION

The judgment of the Chancery Court of Benton County is affirmed. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Robert Harold Douglas, and his surety.

_____
J. STEVEN STAFFORD, JUDGE